THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH MEREDITH, | ) | |
| Plaintiff, | ) | 1:16-cv-01102-PAG |
| | ) | |
| vs. | ) | |
| | ) | Judge Gaughan |
| UNITED COLLECTION BUREAU, INC., | ) | |
| Defendant. | ) | |

## **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**

Aimed at protecting consumer privacy rights and promoting public safety, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b), broadly prohibits making automated and/or prerecorded voice calls to cellular telephones. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). Defendant United Collection Bureau, Inc. ("UCB") robocalled plaintiff's cellular telephone several times, looking for a person who was not plaintiff. Plaintiff has no relationship with UCB, does not know the debtor, and tried to mitigate wrong number calls like this by having an outgoing voicemail message saying that the caller had reached "Dee of Georgia Traffic Lawyers." Judge Easterbrook colorfully described this scenario four years ago, holding that these calls violate the TCPA:

> The machine, called a predictive dialer, works autonomously until a human voice comes on the line. If that happens, an employee in Bill Collector's call center will join the call. But Customer no longer subscribes to Cell Number, which has been reassigned to Bystander.
>
> A human being who called Cell Number would realize that Customer was no longer the subscriber.
>
> But predictive dialers lack human intelligence and, like the buckets enchanted by the Sorcerer's Apprentice, continue until stopped by their true master. Meanwhile Bystander is out of pocket the cost of the airtime minutes and has had to listen to a lot of useless voicemail.

*Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 638–39 (7th Cir. 2012) (breaks supplied).

In this class action, plaintiff propounded targeted discovery requests on UCB regarding the parties' claims and defenses, including as to its calling and consent data and policies, practices, and procedures, persons with relevant information, insurance policies, prior testimony and statements relating to the TCPA, and relevant contracts between UCB and its creditor clients. In response, UCB supplied one call recording and nine pages of documents relating to the named plaintiff only, with virtually no substantive interrogatory responses. With defendant unwilling to comply in good faith with its discovery obligations in this case, plaintiff respectfully requests that the Court order UCB to respond to her interrogatories and requests for production.

## I.  **Summary of the Case**

Plaintiff filed this class action on May 9, 2016, seeking redress for autodialed, debt collection robocalls defendant UCB made to the cell phones of herself and others without prior express consent, in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii). (Compl. ¶¶ 1, 24-27.)

In January and February of 2016, UCB initiated several autodialed calls to Plaintiff's cell phone in an attempt to collect a debt. (Compl. ¶¶ 11-12, 16-17.) Any person calling her number would be able to tell that it belongs to plaintiff; her voicemail greeting identifies herself as "Dee of Georgia Traffic Lawyers." Regardless, and likely because it was making unattended robocalls, UCB's automated equipment did not understand that it was calling the wrong person. As identified in Paragraph 15 of the Complaint, it instead left several voicemail messages, stating:

> You should not listen to this message so that other people can hear it, as it contains personal and private information. There will now be a three second pause in this message to allow you to listen to this message in private. This communication is from United Collection Bureau, Inc., a debt collector, this is an attempt to collect a debt and information obtained will be used for that purpose. Please contact United Collection Bureau, Inc., at 800-444-2032 during our normal business hours M-R 8am to 7pm and F 8am to 5pm EST. When calling please have the following reference number available xxxx9591. Again please contact United Collection Bureau, Inc., at 800-444-2032. Thank you. Good Bye.

UCB did not have plaintiff's consent to call her cell phone, and it knew or should have known this fact. (Compl. ¶ 19.) Indeed, Defendant has a practice of making autodialed or prerecorded voice calls to consumers' cell phones without consent and, on information and belief, uses skip-tracing or similar third-party means to acquire debtor contact information, rather than from the consumer directly. (Compl. ¶¶ 21, 24-25.) UCB's calling practices have invaded consumers' privacy and otherwise harmed plaintiff and other class members. (Compl. ¶ 22.) In fact, UCB is currently defending at least three other TCPA lawsuits alleging the same conduct. *See Abplanalp v. UCB*, No. 15 CVS 6151 (N.C. Super. Ct. Mar. 30, 2015); *Dickson v. UCB*, No. 16-1387 (M.D. Pa. July 1, 2016); *Ehrhart v. UCB*, No. 16-1519 (M.D. Pa. July 22, 2016);

## II.     Procedural History

Plaintiff issued discovery requests to UCB on July 7, 2016. After an extension, UCB provided the responses attached as Exhibit A on August 22, 2016. These responses provided no information at all, and suggested that UCB would not produce anything absent a confidentiality order. The parties met and conferred telephonically on September 22, 2016, going through each of the discovery requests, with plaintiff's counsel answering questions raised by defense counsel.

Plaintiff drafted a confidentiality order, to which UCB eventually agreed, and which the Court entered on September 20, 2016. DE 16. On September 26, 2016, UCB produced a single page of "account notes," Exhibit C at 1 (under seal), and on October 3, 2016, UCB produced a three-page excerpt from its $10M insurance policy. At 5:59 p.m. on October 17, 2016, the day before the 9:00 a.m. status conference with the Court, UCB provided supplemental responses attached as Exhibit B. On October 21, 2016, UCB produced an audio recording of a call in which plaintiff informed UCB that it was calling the wrong number, a two-page call log record of calls with plaintiff, and a three-page, redacted "medical intake record" for the debtor UCB was trying

3

to reach when it called plaintiff. <u>Exhibit C</u> at 2-10 (under seal). Nothing further was produced.

**III.     The TCPA**

The TCPA, 47 U.S.C. § 227, was enacted in response to widespread public outrage over the proliferation of intrusive, nuisance calling practices. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). Indeed, "[m]onth after month, unwanted robocalls and texts … top the list of consumer complaints received by the [FCC]." *In re Rules & Regs. Implementing the TCPA*, CG Docket No. 02-278, 2015 WL 4387780, at ¶ 72 (July 10, 2015) ("*FCC 2015 Ruling*"). To that end, some of the TCPA's most stringent restrictions pertain to calls placed to cell phones: The statute categorically bans the making of any non-emergency call using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service, unless with the "prior express consent" of the called party. 47 U.S.C. § 227(b)(1)(A)(iii); *Soppet*, 679 F.3d at 638 ("An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.").

"'Prior express consent' is ... an affirmative defense to an alleged TCPA violation, for which the defendant bears the burden of proof." *Levy v. Receivables Performance Mgmt., LLC*, 972 F. Supp. 2d 409, 417 (E.D.N.Y. 2013). The FCC has clarified that, while "[providing] a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt[,] … [s]hould a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent." *In re Rules & Regs. Implementing the TCPA*, 23 FCC Rcd. 559, at ¶¶ 9-10 (2008) ("*2008 TCPA Order*").

For instances where a debt collection agency mistakenly makes an autodialed or prerecorded-voice call to a cell phone number that has since been reassigned to an individual

4

other than the alleged debtor for whom it purportedly had consent to call, the FCC has instituted a one-call grace period intended to permit an automated call to learn the identity of the recipient:

> [W]here a caller believes he has consent to make a call and does not discover that a wireless number had been reassigned prior to making or initiating a call to that number for the first time after reassignment, liability should not attach for that first call, but the caller is liable for any calls thereafter.

*FCC 2015 Ruling*, 2015 WL 4387780, at ¶ 72. The FCC has thus advised that debt collectors should take special care to ensure that they call debtors' telephone numbers, rather than some third-party. *Id.* at ¶¶ 84, 90 n. 312. UCB did not take care; instead, it instituted a prerecorded message blast-calling campaign to telephone numbers it received from the creditor, without any idea where the creditor received the number, or whether it was really reaching the correct person.

## IV. Argument

### A. UCB's Responses Are Improperly Crafted So That the Reader Cannot Tell What Has Been Withheld, and What Does Not Exist.

UCB's objections are insufficient as a matter of law. First, UCB's original discovery responses are replete with generalized objections; both at the beginning and in each individual response. Exhibit A. During the parties' meet and confer, plaintiff requested that UCB explain (a) what objections apply to what requests, and (b) what information or materials were being withheld based upon the objections. UCB then produced the supplemental responses attached as Exhibit B, which purport to "adopt and incorporate" the "Preliminary Statement and Reservation of Rights, the General Objections, and the specific objections" in the original responses. For the reasons below, these objections are improper, and should be disregarded or overruled.

The purpose of objections is to explain to the requesting party, and the judge, why the responding party is not producing certain materials or information. The Committee Notes to the 2015 Amendment to Fed.R.Civ.P. 34(b)(2)(B) and 34(b)(2)(C), explain a party's duty to identify

5

objections with specificity, so that a receiving party can understand what exists but has not been produced pursuant to objection. "The purpose of the amendment is to 'end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections.'" *Fed. Deposit Ins. Corp. v. Ark-La-Tex Fin. Servs., LLC*, No. 15-2470, 2016 WL 3460236, at *4 (N.D. Ohio June 24, 2016) (quoting Committee Notes).

Similarly, as to interrogatories, Fed. R. Civ. P. 33(b)(4) states that "all grounds for an objection to an interrogatory shall be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." *Panola Land Buyers' Association v. Sherman*, 762 F.2d 1550 (11th Cir. 1985); *Davis v. Fendler*, 650 F.2d 1154 (9th Cir. 1981); *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540 (10th Cir. 1984); *Shaap v. Executive Ind. Inc.*, 130 F.R.D. 384, 398 (N.D. Ill. 1990) (objection should be specific enough so court can ascertain objectionable nature of the request). "Our system of discovery was designed to increase the likelihood that justice will be served in each case, not to promote principles of gamesmanship and deception in which the person who hides the ball most effectively wins the case." *Abrahamsen v. Trans-State Exp., Inc.*, 92 F.3d 425, 428–29 (6th Cir. 1996).

*None* of UCB's objections comply with these Rules. The objections for every single document request is a cut-and-paste job, beginning with:

> Defendant incorporates by reference the general objections stated above. Defendant objects to this request on the ground that it is overly broad. Defendant also objects to this request on the ground that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Exhibit A at Doc. Reqs. 1-11. Some responses have additional non-specific objections, as well, such as "vague and ambiguous" or "unduly burdensome and oppressive." Others, like Document Requests 1, 2, and 5, promise to produce materials (they don't say what), "if they exist" when a

6

protective order is entered. The protective order was entered on September 20, 2016, DE 16, but UCB has only sent a few pages of materials, and only for the named plaintiff.

UCB's interrogatory responses are no better: They state the same boilerplate "overly broad," "irrelevant and not reasonably calculated to lead to the discovery of admissible evidence," and "vague and ambiguous" objections as its production request responses. Exhibit A, Interrogs. 1-9. And although Fed. R. Civ. P. 33 allows up to 25 requests, UCB objects to Interrogatories 9 and 10 on the basis that they somehow "exceed[] the number of interrogatories permitted[.]" UCB also asserts "the attorney-client privilege or attorney work product doctrine" as to Interrogatory 4 and Production Requests 6 and 8-11, but has not produced a privilege log.

"There is no provision in the Federal Rules for preserving objections.... Having failed to answer or make specific legitimate objections to particular interrogatories within the time allowed, defendants were held to have waived objections to all interrogatories." *Hobley v. Burge*, No. 03-3678, 2003 U.S. Dist. LEXIS 20585, at *11 (N.D. Ill. Nov. 12, 2003), *vacated on other grounds*, 433 F.3d 946, 947 (7th Cir. 2006); *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) ("[T]he mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an interrogatory. On the contrary, the party resisting discovery 'must show specifically how ... each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.'"). The same goes for responses to production requests. *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511–12 (N.D. Iowa 2000); *see, e.g., In re Heparin Prod. Liab. Litig.*, 273 F.R.D. 399, 411 (N.D. Ohio 2011) (deeming boilerplate objection waived).

UCB objects generally on burdensomeness, but such objection "must show specifically how an interrogatory is overly broad, burdensome or oppressive, by submitting affidavits or

7

offering evidence which reveals the nature of the burden." *Chubb Integrated Systems v. Nat's Bank of Washington*, 103 F.R.D. 52, 59-60 (D.D.C. 1984). "[T]he mere statement by a party that [an] interrogatory was overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection to an interrogatory." *Josephs*, 677 F.2d 985, 992.

The purpose of this requirement is so that the parties can work together to figure out how to remove or lessen any true burden. Of course, sometimes a party will claim production of materials would be burdensome as a pretext for not providing damaging information. During the parties' meet and confer talks, plaintiff's counsel offered to try to lessen the burden of search and production – particularly with respect to the ESI requests – if UCB explained what existed and how it was stored. UCB responded to those offers by producing the insufficient supplemental responses in Exhibit B, which provide no responsive information. Interrog. 6-7, Doc. Req. 4.

The Federal Rules of Civil Procedure allow for broad discovery. A party may seek production of any document "in the responding party's possession, custody and control" that is relevant and within Rule 26(b). Fed. R. Civ. P. 34(a). When a party fails to respond to a proper discovery request, Rule 37 authorizes a motion to compel. *Crabbs v. Scott*, No. 12-1126, 2013 U.S. Dist. LEXIS 113414, at *4-5 (S.D. Ohio Aug. 9, 2013).

The Federal Rules do not permit a party to "preserve objections" through meaningless boilerplate. *See* Fed. R. Civ. P. 33(a)(4) ("The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless he court, for good cause, excuses the failure."). Here, UCB has repeatedly refused to comply with its discovery obligations, and has rejected attempts by plaintiff's counsel to ascertain the scope and nature of its ESI and other materials relevant to this case—let alone resolve the discovery disputes at issue without Court involvement. This cannot serve as "good cause" to excuse UCB's

overwhelming discovery deficiencies, and its objections should therefore be deemed waived.

### B. Calling and Consent Policies, Practices and Procedures.

Plaintiff issued Interrogatory 8 and Document Requests 5, 6, 9, and 11 to learn about UCB's calling and consent, including policies, practices and procedures. Those requests are:

> <u>Interrog. 8</u>. Identify all policies, practices and procedures relating to communicating with debtors, non-debtors or third parties, including notifications that you may have been calling a disconnected, changed or otherwise wrong number.
>
> <u>Doc. Req. 5</u>. All documents that concern the possible or actual calling of non-debtors for collection purposes.
>
> <u>Doc. Req. 6</u>. All policy, practice or procedure related documents (including email) that pertain or apply to defendant or any vendor making debt collection telephone calls.
>
> <u>Doc. Req. 9</u>. All emails and other documents that touch upon calling non-debtors in connection with collection of debts, regardless of whether such calls were intentionally made to non-debtors.
>
> <u>Doc. Req. 11</u>. All documents pertaining to the TCPA, without regard to time.

The requested materials are relevant to plaintiff's *prima facie* case. This case alleges that UCB made improper telephone calls without consent, through use of equipment that makes calls based upon how it has been programmed. It is axiomatic that, in a case based on automated phone calls, the defendant's policies, practices, and procedures relating to such calls is relevant.

Moreover, the TCPA permits treble damages where, as alleged here, the TCPA violations were willful. 47 U.S.C. § 227(b)(3); Complaint ¶ 26. These requests are tailored to learn about UCB's state of mind and knowledge as to the TCPA in relation to its calls. *See Sengenberger v. Credit Control Servs., Inc.*, No. 09-2796, 2010 WL 6373008, at *1-2 (N.D. Ill. June 17, 2010) (discussing "willfulness" under the TCPA, holding that "to commit a willful or knowing offense, a defendant must only know of the facts that constituted the offense, not that the defendant knows that its conduct is in violation of any law") (citing *Charvat v. Ryan*, 879 N.E.2d 765, 770

(Ohio 2007)); *but see Manufacturers Auto Leasing, Inc. v. Autoflex Leasing, Inc.*, 139 S.W.3d 342, 346 (Tex. App. 2004) ("[T]he TCPA is willfully or knowingly violated when the defendant knows of the TCPA's prohibitions, knows he does not have permission to send a fax ad to the plaintiff, and sends it anyway."). These requests are therefore not only necessary in order to permit plaintiff to investigate UCB's general practices relating to the illegal calling at issue, but to establish its willful violations of the TCPA, period. The Court should therefore compel UCB to fully and completely respond to these discovery requests.

### C. Database-Related Requests.

This case is data-driven. As such, plaintiff requested information and documents concerning UCB's databases so that she could understand what data exists, with an eye toward obtaining such as efficiently as possible. As is apparent from the database query result UCB did for the named plaintiff, it keeps track of the calls it makes through some database system. Exhibit C at 1, 5. Plaintiff issued requests to learn what kind of database UCB maintains, and how that database works. Those requests are Interrogatories 6 and 7, and Document Request 4.

> Doc. Req. 4. A key for your database, as well as any other documents that may assist one in understanding any data, codes, columns, field names or other abbreviated matter pertinent to this case, including for example information and documents responsive to interrogatory 1, including for example a data dictionary, database schema, list of data tables, or explanation of data points.
>
> Interrog. 6. Identify and describe any and all databases, data tables, fields, data points and codes that existed and/or were maintained at any time since May 9, 2012, relating to telephone calls responsive to interrogatory 1.
>
> Interrog. 7. Identify and describe any and all data tables, fields, data points and codes that existed and/or were maintained at any time since May 9, 2012, relating to whether you may have had consent to make the telephone calls responsive to interrogatory 1.

Only UCB knows the inner workings of its relevant systems and data, and plaintiff should not be left to guess how its relevant data should be interpreted. *See* 15 Sedona Conf. J. 181-82 (Fall

2014) (discussing production of database information, noting that "[f]ield value translations and/or associated lookup tables may be critical to understanding accurately the content of the data file, and a responding party should provide this additional information if necessary").

Plaintiff's investigation suggests that it is no secret that UCB uses "Columbia Ultimate Business System ("CUBS") contact management software. Exhibit D, Klein Declaration. Online advertising for the CUBS system says that "[a]ction codes make it easy to record the history and results of all contact attempts."[2] The CUBS system is capable of doing sophisticated analytics, including "[i]dentify accounts that are most likely to pay and the value they represent. UltimateAnalytics can help you gain that extra edge through account profiling, data services, reporting and dashboards, and process optimization."[3] Columbia Ultimate also has an online portal for its customers such as UCB, which permits access to these analytics tools, as well as manuals and other documentation concerning CUBS. It is reasonable for UCB to be required to explain its data and how it is stored and maintained, and this information should be produced.

**D. Class Data Requests**.

Plaintiff also issued requests to obtain information about the persons and accounts that are within the class she seeks to represent, including Interrogatory 1 and Document Request 2.

Interrogatory 1 asks that UCB produce the data it has for calls to people in the putative class; Document Request 2 asks for the data itself. The set of persons for whom the requests ask for data regarding includes all persons in the United States who:

> (a) UCB and/or someone on its behalf called at least twice; (b) and played the same or similarly created message to the voice mail left for plaintiff; (c) where the phone number was not obtained from the recipient of the call, as to the alleged debt being collected; (d) where at least one call was made on or after May 9, 2012.

---

[2] https://www.columbiaultimate.com/products/the-collector-system
[3] https://www.columbiaultimate.com/products/ultimateanalytics

During the parties meet and confer sessions, plaintiff's counsel offered to try to narrow this request. For example, since this case only has to do with calls to cell phones, plaintiff offered for plaintiff or defendant to "scrub" the result, so that only calls to cellular telephones would need to be produced. Further, to the extent that UCB was willing to produce information concerning its databases, plaintiff offered to further narrow the request to include only telephone calls that were made to "wrong number" call recipients as identified in UCB's data. UCB, however, still maintains that it need not provide any information concerning its systems or data.

UCB had a duty to collect and maintain much of the requested information. The Illinois Administrative Code, 68 Ill.Admin.Code 1210.140(b)(1)(A)(iii) requires that Illinois-licensed debt collection agencies, including UCB, keep detailed records of telephone calls, including "[d]ates and record of contents of each telephone contact with all individuals regarding debtor's account, including identification of individual who made the contact and to whom that individual spoke." There exists no exception for calls made with a prerecorded message. While plaintiff is not suing UCB for violation of the Illinois Administrative Code, she submits that this regulation shows that UCB should have been keeping track of its communications.

Courts routinely order production of class data and consent information such as that which is sought here in TCPA cases. *Kane v. Nat'l Action Fin. Servs., Inc.*, No. 11-11505, 2012 WL 1658643, at *7 (E.D. Mich. May 11, 2012); *Donnelly v. NCO Fin. Sys, Inc*., 263 F.R.D. 500 (N.D. Ill. 2009), defendant's Fed.R.Civ.P. 72 objections overruled by *Donnelly v. NCO Fin. Sys. Inc*., 09-2264, 2010 U.S. Dist. LEXIS 9866 (N.D. Ill. Jan. 13, 2010) ("For the reasons set forth in this order, the Court overrules NCO's objections to Magistrate Judge Nolan's December 16, 2008 Order and directs NCO to comply fully with it or face sanctions that may include striking its defenses."); *Balbarin v. North Star Capital Acquisition, LLC*, 2010 U.S. Dist. LEXIS 118992

* 3 (N.D. Ill. Nov. 9, 2010). Indeed, the court in *Patrick D. Michael, DDS v. WM Healthcare Solutions, Inc.*, No. 10-00638, DE 31 (S.D. Ohio Sept. 8, 2011), considered the defendant's privacy objections associated with production of a class list. After weighing the burden against the benefit, the court found that the class list should be produced, despite being over-inclusive.

This is a class action, and on both the merits of proving damages on a per-violation (i.e., per-call) basis under 47 U.S.C. § 227(b)(3) and disproving UCB's expected "consent" defense, as well as establishing numerosity, typicality, predominance, and the other requirements of Fed. R. Civ. P. 23 for class certification, the identification and production of the calls upon which plaintiff's claims are based is paramount. The Court should compel such production.

**E. Relevant Persons.**

Interrogatories 3 and 9 ask for the identities of UCB personnel, so that plaintiff may (1) figure out who to depose, and (2) determine which persons may be appropriate custodians for email and ESI searching:

> Interrog. 3. Identify all persons who participated in outbound calls responsive to interrogatory 1, including for example: who was involved in deciding any campaign strategy, who loaded the numbers into any dialer, persons to whom calls may have been routed, and who drafted the marketing scripts. Include their names, titles, physical location and job description.
>
> Interrog. 9. Identify all persons who had responsibility for any aspect of outbound calling through use of prerecorded messages at any time between May 9, 2012 and May 9, 2016. Include third parties, former employees and current employees, including at least the following categories:
> a. Deciding what phone numbers to load into the dialer, or what numbers would be included in campaigns;
> b. Deciding what phone numbers should be called using prerecorded messages;
> c. Loading phone numbers into the dialer;
> d. Monitoring the dialer while it was engaged in campaigns;
> e. TCPA Compliance.

These requests seek to identify persons relevant to the cause of action or defenses. There is nothing irrelevant or burdensome about providing this information, and it should be compelled.

13

**F. Insurance Policy**.

Federal Rule 26(a)(1)(A)(iii) requires a party to produce any insurance policy that might afford coverage to a particular case. The policy behind this allows plaintiff to know who may be liable to pay a judgment, and the identity of decisionmakers on the other side of the "v." UCB's production of three pages of its $10,000,000 policy and assurance that the carrier has agreed to pay the costs of defense is insufficient; the Rule requires automatic disclosure of the entire policy, not the portions defendant thinks are relevant. Moreover, UCB's claims of confidentiality on this point are not well-founded, because the parties have entered into a court-endorsed, agreed confidentiality order. Plaintiff requests that the Court order UCB to produce the entirety of any insurance policy that may afford coverage to this case, including any excess or umbrella policy.

**G. Other Requests**

Interrogatory 4 asks UCB to identify complaints concerning calls to persons who allegedly did not consent to receive them, and any associated action taken. Beyond identifying potential class members, this request is directly relevant to UCB's willfulness in continuing to make calls despite being put on notice that it lacks consent to do so—and thus the suitability of treble damages under 47 U.S.C. § 227(b)(3). A full and complete response should be compelled.

Document Request 3 asks for deposition transcripts and declarations from TCPA or dialer-related actions—documentation that will necessarily contain not only substantive information regarding UCB's calling technology and practices, but serve as evidence itself as to the willfulness of UCB's continued violations of the TCPA. The importance of this request is underscored by Exhibit D, a publicly-filed declaration plaintiff found from UCB's Director of Compliance, explaining that defendant's account notes are managed through a "CUBS" program that permits UCB's clients to automatically transfer their debtor data into its system—including,

presumably, contact phone numbers UCB will later robocall. And yet, UCB's supplemental responses equivocally state that, "subject to" its objections, it does not have any requested information relating to plaintiff or any class member. Exhibit B, at Doc. Req. 3. Defendant's statements in other TCPA or dialer-related actions are directly relevant its practices during the class period and continuing failure to comply with the TCPA, and should be produced.

Document Request 7 asks for the contract with any creditor that hired UCB. This is relevant because creditors have liability for calls made on their behalf. While plaintiff believes such liability to be strict, defendants routinely argue that plaintiffs must prove vicarious liability. *See Martin v. Cellco P'ship*, No. 12-5147, 2012 WL 5048854, at *2 (N.D. Ill. Oct. 18, 2012) ("Verizon contends that the 2008 TCPA Order is inapplicable because it did not address the issue of vicarious liability in the context of this matter. But [it] appears to impose a strict liability standard on creditors who farm their debts out to third-party debt collectors."); *Soppet*, 679 F.3d at 642. Such materials will also likely include information regarding the background and scope of UCB's calls to class members for such clients. The Court should thus compel their production.

### H. Depositions

Mindful that Local Rule 30.1(1) requires counsel "to make a timely and good faith effort to confer and agree to schedules for the taking of depositions," on September 22, 2016, plaintiff requested that UCB provide proposed dates for depositions. Exhibit E. Plaintiff has followed up several times, but UCB has not provided dates; as such, available dates should be compelled.

### V. Conclusion

WHEREFORE, plaintiff respectfully requests that the Court deem UCB's objections waived, and compel it to provide proper discovery responses to Interrogatories 1, 3-4, and 6-9 and Document Requests 2-7, 9, and 11, a privilege log, and dates for its deposition.

Dated: October 28, 2016	Respectfully submitted,

DEBORAH MEREDITH

By: _s/ Alexander H. Burke_
　　　One of Plaintiff's Attorneys


Alexander H. Burke (*pro hac vice*)
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289
aburke@burkelawllc.com

Larry P. Smith (*pro hac vice*)
David Marco (*pro hac vice*)
SMITHMARCO, P.C.
20 So. Clark St., Suite 2120
Telephone: (888) 822-1777
Facsimile: (888) 418-1277
lsmith@smithmarco.com
dmarco@smithmarco.com

Mitchel E. Luxenburg
LUXENBURG & LEVIN, LLC
23875 Commerce Park, Ste. 105
P.O. Box 22282
Beachwood, OH 44122
Telephone: (216) 452-9301
Facsimile: (866) 551-7791
mitch@mluxlaw.com

*Counsel for Plaintiff*

## FED. R. CIV. P. 37(A)(1) CERTIFICATION

As described in further detail herein, plaintiff has in good faith conferred with defendant, by and through counsel, regarding the discovery disputes at issue in an effort to obtain production without court action, but the parties have been unable to resolve the matters at issue by agreement.

                                                                                     *s/ Alexander H. Burke*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 28, 2016, I caused the foregoing to be electronically filed with the Clerk of the United States District Court for the Northern District of Ohio using the CM/ECF system, which will send notification of such filing to all counsel of record. Sealed materials will be sent by mail to counsel of record.

                                                                                     *s/ Alexander H. Burke*