THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH MEREDITH, | ) | |
| Plaintiff, | ) | 1:16-cv-01102-PAG |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED COLLECTION BUREAU, INC., | ) | Judge Gaughan |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**

Defendant United Collection Bureau, Inc. ("UCB"), a debt collector, targets debtors with autodialed, prerecorded-voice collection calls using unvetted contact information obtained from its clients or third-party skip-trace services. Because such indirect information is frequently outdated or inaccurate, UCB's practices foreseeably result in it making numerous wrong number calls to the cell phones of people *other than* the debtor, including Plaintiff—in violation of the Telephone Consumer Protection Act's prohibition against calling cell phones using an autodialer or prerecorded voice without the called party's prior express consent. 47 U.S.C. § 227(b)(1)(A).

UCB admits calling wrong numbers, and that its database has accounts of those calls. Dkt. 25 at 5. But while it previously persuaded this Court to deny Plaintiff's motion to compel production of class data on the basis that identifying such records would require a manual account review, the subsequent deposition of UCB's Chief Technology Officer has confirmed that this assertion was false: UCB can, in fact, run a program to query its database.

Plaintiff thus offered UCB three options: (1) write the program and produce only the class data necessary to the case; (2) stipulate to numerosity and agree that defendant will not refer to or use the yet-to-be-produced materials in opposition to class certification; or (3) produce its database so Plaintiff can run the program herself. Because UCB won't agree to any proposal

and won't suggest an alternative, Plaintiff now moves to compel production of UCB's database relevant to the class.

## I. SUMMARY OF THE CASE

The TCPA, 47 U.S.C. § 227, was enacted in response to widespread public outrage over the proliferation of intrusive, nuisance calling practices. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). Indeed, "[m]onth after month, unwanted robocalls and texts … top the list of consumer complaints received by the [FCC]." *In re Rules & Regs. Implementing the TCPA*, CG Docket No. 02-278, 2015 WL 4387780, at ¶ 72 (July 10, 2015). To that end, some of the TCPA's most stringent restrictions pertain to calls placed to cell phones: The statute categorically bans the making of any non-emergency call using an automatic telephone dialing system or an artificial or prerecorded voice to a cell phone without the "prior express consent" of the called party. 47 U.S.C. § 227(b)(1)(A)(iii); *Soppet*, 679 F.3d at 638 ("An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance."). Despite the TCPA's clear prohibition against automated calls to cell phones, UCB instituted a prerecorded message blast-calling campaign to alleged debtors, regardless of the validity of the number called or whether it was reaching the right person.

As to Plaintiff Meredith, UCB initiated several autodialed calls to Plaintiff's cell phone in January and February 2016 to collect a debt. Compl. ¶¶ 11-12, 16-17. Any person calling her number would be able to tell that it belongs to Plaintiff; her voicemail greeting identifies herself as "Dee of Georgia Traffic Lawyers." Regardless, and likely because it was making unattended robocalls, UCB's automated equipment did not understand that it was calling the wrong person. Instead, UCB left several voicemail messages, stating:

> You should not listen to this message so that other people can hear it, as it contains personal and private information. There will now be a three second pause

>in this message to allow you to listen to this message in private. This communication is from United Collection Bureau, Inc., a debt collector, this is an attempt to collect a debt and information obtained will be used for that purpose. Please contact United Collection Bureau, Inc., at 800-444-2032 during our normal business hours M-R 8am to 7pm and F 8am to 5pm EST. When calling please have the following reference number available xxxx9591. Again please contact United Collection Bureau, Inc., at 800-444-2032. Thank you. Good Bye.

UCB did not have Plaintiff's consent to call her cell phone, and it knew or should have known this fact. Compl. ¶ 19. Indeed, Defendant has a practice of making autodialed or prerecorded voice calls to consumers' cell phones without consent and, on information and belief, uses skip-tracing or similar third-party means to acquire debtor contact information, rather than from the consumer directly. Compl. ¶¶ 21, 24-25. Plaintiff filed this class action on May 9, 2016, seeking redress for autodialed, debt collection robocalls Defendant UCB made to the cell phones of herself and others without prior express consent, in violation of the TCPA. Compl. ¶¶ 1, 24-27.

## II.  PROCEDURAL HISTORY

Plaintiff issued discovery requests to UCB on July 7, 2016. After multiple conferrals between the parties' counsel failed to elicit meaningful responses to Plaintiff's discovery requests by UCB—including the outright refusal to produce *any* class data—Plaintiff filed a motion to compel production on October 28, 2016. Dkt. 19.

After full briefing, on November 10, 2016, the Court issued its order on Plaintiff's motion to compel, which declined to compel UCB to produce class "wrong number" information, relying on UCB's representation that it "has no mechanism for culling the information that plaintiff seeks." Dkt. 25 at 6. The Court did, however, compel UCB to submit to scheduling its Rule 30(b)(6) deposition, Dkt. 25 at 14.

UCB's Rule 30(b)(6) deponent, Chief Technology Officer Mark Beirdneau, testified that—notwithstanding UCB's representations to this Court that a "manual review of all

3

accounts" would be needed, Dkt. 23 at 4—a program *could* be written to run a query of its data to identify "wrong number" recipients of its autodialed, prerecorded-voice calls:



Exhibit 3, Beirdneau Dep., at 54:21-55:24 (Dec. 6, 2016); *see also Id.* at 30; 56-58; 61-62 (one could take list of account numbers and run them through program to pull respective account notes). In fact, Mr. Beirdneau testified that he previously *wrote* a program that could extract records with specific action codes from UCB's CUBS database. Beirdneau Dep., at 57:24-58:9.

In light of UCB admitting that its database is able to be searched for class information, and the relevance of such information to class certification and Plaintiff's ability to establish damages and prove her case, Plaintiff requested that UCB write the necessary program and produce the responsive class data of wrong number calls and associated account notes for the class period. UCB declined to do so, and it has similarly declined to accept Plaintiff's other

4

proposals that it either forego production of the class information until after class certification, with a stipulation to numerosity under Rule 23, or simply produce the relevant portions of its database to Plaintiff so that she may conduct the necessary query herself. *See* E-mail Correspondence, attached as Exhibit 1; Hansen Decl., attached as Exhibit 2.

Defendant has failed to propose any reasonable alternative for identifying the class in this case, and in fact, defense counsel has opted to use this Court's prior discovery order as a basis for refusing to produce *any* class discovery in this case at all. With non-expert discovery soon closing on March 31, 2017, Dkt. 14, Plaintiff requests that this Court compel UCB to produce those limited portions of its database that would permit Plaintiff to determine how many, and which, calls Defendant made to wrong numbers using its dialer or a prerecorded voice message.

### III.   ARGUMENT

#### A.  UCB Should Produce Data to Enable Plaintiff to Identify the Class.

This is a class action, and the size and nature of the class are thus inherently germane to Plaintiff's case. Plaintiff, therefore, issued discovery requests to UCB aimed at identifying class members and the calls Defendant made to them in violation of the TCPA—which she later agreed to limit in scope to only those which, like hers, were made to a "wrong number."[1] UCB admits that its records contain this information, and that a program could be coded to obtain it. Beirdneau Dep., at 54-58. Where UCB refuses to conduct this search, however, and where Plaintiff has offered to do so herself using a limited copy of the relevant portions of Defendant's database at her own expense, there is no good reason why this Court should not compel its production. The Court should therefore respectfully compel Defendant to produce those limited

---

[1]   Interrogatory 1 requests that UCB identify all outgoing calls to the class; whereas, Request for Production 2 requests all documents or data concerning or relating to any associated call, person, or phone number. *See* Defendant's Discovery Responses, attached as Exhibit 4.

portions of its database relevant to identifying the class and the calls UCB made to it.[2]

Because this is a putative class action, the size and nature of the class, evidence supporting numerosity, commonality, typicality, predominance, and superiority under Fed. R. Civ. P. 23, and UCB's assertion of "consent" and other defenses it may raise against class certification, are all highly relevant to this case. Further, because the TCPA provides for damages on a per-violation (i.e., per-call) basis, the number of calls to class members is relevant not only to the merits, but to the resulting relief afforded under the statute. 47 U.S.C. § 227(b)(3). Despite multiple conversations on the subject, UCB will not even respond to Plaintiff's proposal that the parties forego class production for the time-being by simply stipulating to numerosity and agreeing that UCB will not refer to or use this data in opposition to class certification, even though no party disputes that automated and prerecorded calls were made to "wrong number" cell phones. Absent agreement on this point or production of the data, Plaintiff has no choice but to file this motion in order to obtain the materials necessary to prove the elements of Rule 23 and rebut UCB's arguments. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)); *In re Allstate Inc. Co. Underwriting & Rating Practices Litig.*, 917 F. Supp. 2d 740, 751 (M.D. Tenn. 2008). After all, the question here isn't whether the data exists or is relevant; the question is whether it should be produced.

Courts routinely order production of class call and consent data in TCPA cases. *Kane v. Nat'l Action Fin. Servs., Inc.*, No. 11-11505, 2012 WL 1658643, at *7 (E.D. Mich. May 11, 2012); *Donnelly v. NCO Fin. Sys, Inc.*, 263 F.R.D. 500 (N.D. Ill. 2009), defendant's Fed. R. Civ.

---

[2] Normally class member identification falls outside the scope of Fed. R. Civ. P. 26(b)(1), and is more appropriately addressed in terms of notice to the class post-certification. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354 (1978). Plaintiff files this motion out of an excess of caution, and in order to ensure that she has what she needs to rebut UCB's arguments in opposition to class certification, e.g., that the class is not sufficiently numerous.

P. 72 objections overruled by *Donnelly v. NCO Fin. Sys., Inc.*, No. 09-2264, 2010 WL 308975, at *1 (N.D. Ill. Jan. 13, 2010) ("Unless NCO never intended to, and will not, assert a consent defense to the putative [TCPA] class claims — an assertion it does not make — it should have marshaled the evidence in support of that defense long ago."); *Balbarin v. North Star Capital Acquisition, LLC*, 2010 U.S. Dist. LEXIS 118992, at *3 (N.D. Ill. Nov. 9, 2010).

Moreover, attempts by defendants like UCB to avoid liability by arguing that the way their data is organized or stored makes it "too hard" to search or produce—even if accepted as true—are routinely rejected by courts.[3] Indeed, courts have repeatedly recognized that justice and the consumer protections intended by Congress in enacting the TCPA are <u>not</u> served by permitting bad actors to avoid liability through shoddy or disorganized recordkeeping. *E.g., Saulsberry v. Meridian Fin. Servs., Inc.*, No. 14-6256, 2016 WL 3456939, at *9 (C.D. Cal. Apr. 14, 2016) ("In essence, Meridian argues that because it did not keep easily accessible records of which consumers had consented to ATDS calls, it should be immune from class-wide repercussions when it calls consumers without consent. This perverse incentive runs counter to the protective intent of the TCPA and does not persuade this Court[.]"); *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014) ("[D]efendant has not made a sufficient showing to defeat class certification, since, by its own admission, the defendant keeps poor or nonexistent records of which class members have given consent to the underlying creditor [under the TCPA]. Defendant is in effect asking the Court to reward its imperfect record-keeping practices by precluding class certification."); *Valle v. Glob. Exch. Vacation Club*, No. 16-2149, 2017 WL 433998, at *8 (C.D. Cal. Feb. 1, 2017) ("[T]he Court is not convinced that Defendants have no

---

[3]  In fact, courts have held that the size of a potential class and the need to review individual files to identify class members—like the "manual review" UCB initially argued would be needed in this case—are themselves not sufficient reasons to deny class certification. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532,539 (2012).

way of accessing this information. Class certification cannot be defeated by Defendants' poor record-keeping or failure to establish performance data reporting mechanisms with their third-party vendors. This would incentivize companies to not keep records, or not require that their vendors keep records, in an attempt to circumvent TCPA liability."); *Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, No. 12-5490, 2013 WL 5348377, at *4 (N.D. Ill. Sept. 24, 2013) ("Quill's explanation as to why plaintiff is not entitled to discovery is that Quill created a data storage system that is immune from discovery. If accepted, that explanation would create the perverse incentive of encouraging companies to organize their systems and records in a way that make the information contained in them inaccessible except at great burden and cost. Moreover, the consequences to plaintiff for accepting Quill's representations are severe: if Quill's records make it impossible to determine not just who got which advertisement, but even who received any advertisement, that may be the death knell to any class claim.").

Here, Defendant goes a step further—UCB admits that it *has* records of dialer-made or prerecorded-voice calls to wrong numbers and that there *is* a way to search its data other than the "manual review" it previously told this Court would be needed; it just doesn't want to do so. Plaintiff disputes that doing so would place any significant burden on UCB. Hansen Decl. ¶ 4. Regardless, even when Plaintiff attempted to relieve Defendant of *any* burden by offering to program the query herself using a limited copy of the relevant portions of UCB's database at her own expense, Defendant refused to permit her to do so, citing the need to protect the personally identifiable information of the debtors to whom it's been making harassing collection calls. This is clearly a pretext for non-production, since the parties have already entered into a Stipulated Protective Order covering the production of any such confidential materials. Dkt. 16 ("All documents produced in the course of discovery … shall be subject to this Order concerning

confidential information…."); *see Michel v. WM Healthcare Sol., Inc.*, No. 10-638, 2011 WL 6056728, at *4 (S.D. Ohio Sept. 8, 2011) (rejecting defense third-party confidentiality argument against production of class list in TCPA case, noting that "any confidential information produced ... can be safeguarded through the entry of an appropriate protective order").

UCB's position—that it doesn't have to identify the class because it would require writing code to pull out the relevant data, and that Plaintiff shouldn't be able to do so, either—not only deprives Plaintiff of evidence highly relevant to the merits and class issues in this case; it frustrates the ability of this Court to make a fair and supported class certification determination. As UCB remains unwilling to work with Plaintiff in any capacity to produce information relating to the class in this case, the Court should compel UCB to produce the relevant portions of its database so that Plaintiff may run the necessary query herself.

### B. Database-Related Information.

Given the data-driven nature of this action, it is imperative for Plaintiff to be able to accurately interpret and comprehend UCB's data, much of which includes company-specific codes and identifiers which only UCB knows. Plaintiff therefore requests that the Court compel UCB to cooperate in providing sufficient information for Plaintiff to understand its database.[4]

While Plaintiff did take the deposition of UCB's CTO, Mr. Beirdneau, about which some questions were left unanswered, she also anticipates that further questions will arise about the meaning and interpretation of UCB's data in the course of the requested class production. Even though Mr. Hansen has experience working with CUBS systems, Hansen Decl. ¶ 2, only UCB knows how it implemented and used its relevant systems and data. *See* 15 Sedona Conf. J. 181-82 (Fall 2014) (discussing database information production, noting that "[f]ield value translations

---

[4] Plaintiff notes that she formally requested explanations and descriptions of UCB's data. Exhibit 4, Interrogs. 6 and 7 and Prod. Req. 4.

9

and/or associated lookup tables may be critical to understanding accurately the content of the data file, and a responding party should provide this additional information if necessary").

## IV. CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court compel UCB to either produce its class data relevant to wrong number calls made with its dialer or a prerecorded message, or simply produce those relevant portions of its database so that Plaintiff may identify such records herself. Plaintiff also respectfully requests that the Court compel UCB to cooperate in explaining its database and associated data.

Dated: March 15, 2017                                      Respectfully submitted,

                                                           DEBORAH MEREDITH

                                                           By:  *s/ Alexander H. Burke*

Alexander H. Burke (*pro hac vice*)
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289
aburke@burkelawllc.com

Larry P. Smith (*pro hac vice*)
David Marco (*pro hac vice*)
SMITHMARCO, P.C.
20 So. Clark St., Suite 2120
Telephone: (888) 822-1777
Facsimile: (888) 418-1277
lsmith@smithmarco.com
dmarco@smithmarco.com

Mitchel E. Luxenburg
LUXENBURG & LEVIN, LLC
23875 Commerce Park, Ste. 105
P.O. Box 22282
Beachwood, OH 44122
Telephone: (216) 452-9301
Facsimile: (866) 551-7791

mitch@mluxlaw.com

*Counsel for Plaintiff*

### FED. R. CIV. P. 37(A)(1) CERTIFICATION

As described in further detail herein, Plaintiff has in good faith conferred with Defendant, by and through counsel, regarding the discovery disputes at issue in an effort to obtain production without court action, but the parties have been unable to resolve the matters at issue by agreement.

    *s/ Alexander H. Burke*

### CERTIFICATE OF SERVICE

I hereby certify that, on March 15, 2017, I caused the foregoing to be electronically filed with the Clerk of the United States District Court for the Northern District of Ohio using the CM/ECF system, which will send notification of such filing to all counsel of record. Sealed materials will be sent by mail to counsel of record.

    *s/ Alexander H. Burke*