UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DEBORAH MEREDITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:16-cv-1102-PAG |
| | ) |
| | ) Judge Gaughan |
| UNITED COLLECTION BUREAU, INC., | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT UNITED COLLECTION BUREAU, INC.'S
BRIEF IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER**

30547647

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................................ ii

I.    INTRODUCTION ........................................................................................................ 1

II.    PROCEDURAL HISTORY.......................................................................................... 2

III.    ARGUMENT ............................................................................................................... 9

    A.    The Court Should Grant This Motion For A Protective Order Because Requiring UCB To Write A New Program For Its Existing Database Exceeds The Scope of Allowable Discovery. ................................................................................................................... 9

        1.    Plaintiff's requests exceed the boundaries of permissible discovery under Rule 26 of the Federal Rules of Civil Procedure and the case law decided there under. ....................... 10

        2.    Rule 34 of the Federal Rules of Civil Procedure limits the production of electronically stored information. ........................................................................................ 11

    B.    The Federal Rules Of Civil Procedure Preclude Requiring UCB To Write A New Program For Its Existing Database Or Provide Plaintiff With Unfettered Access To UCB's Databases. .............................................................................................................. 12

    C.    Plaintiff Has Already Deposed UCB's Corporate Representative On The Subjects That Are Enumerated In The New Deposition Notice. ...................................................... 14

IV.    CONCLUSION.......................................................................................................... 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Averett v. Honda*,
  2009 U.S. Dist. Lexis 30179 (S.D. Ohio, March 24, 2009) ............................................. 10

*Alexander v. Fed. Bureau of Investigation*,
  186 F.R.D. 154 (D.D.C.1999) ......................................................................................... 10

*Coleman v. American Red Cross*,
  23 F.3d 1091 (6th Cir. 1994) .......................................................................................... 13

*Commerce Benefits Group, Inc. v. McKesson Corp.*,
  2008 U.S. Dist. LEXIS 17372 (N.D. Ohio March 6, 2008) ............................................ 13

*Ford Motor Company v. Edgewood*,
  257 F.R.D. 418 (D.N.J. 2009) ................................................................................... 10, 13

*Lewis v. ACB Business Services, Inc.*,
  135 F.3d 389 (6th Cir.1998) ........................................................................................... 10

*Martin v. Select Portfolio Serving Holding Corp.*,
  No. 1:05–CV–273, 2006 U.S. Dist. LEXIS 68779 (S.D. Ohio September 25, 2006) ..... 10

*Marshall v. Westinghouse Elec. Corp.*,
  576 F.2d 588 (5th Cir.1978) ........................................................................................... 10

*Ross v. Abercrombie*,
  2008 WL 4758678 (S.D. Ohio Oct. 27, 2008) ............................................................... 13

*Surles v. Greyhound Lines, Inc.*,
  474 F.3d 288 (6th Cir.2007) ........................................................................................... 10

*Treppel v. Biovail*,
  233 F.R.D. 363 (S.D.N.Y. 2006). ................................................................................... 11

**RULES**

Fed. R. Civ. P. 26 ................................................................................................................ 9, 10
Fed. R. Civ. P. 30 ..................................................................................................................... 14
Fed. R. Civ. P. 34 ..................................................................................................................... 11

**I.     INTRODUCTION**

Although this Court has already held that plaintiff Deborah Meredith has asked defendant United Collection Bureau, Inc. ("UCB") for discovery that goes well beyond the scope of permissible discovery under the Federal Rules of Civil Procedure ("FRCP") and the case law decided thereunder in this case concerning UCB's alleged violations of the Telephone Consumer Protection Act ('TCPA"), plaintiff is again asking for information that goes well beyond the scope of permissible discovery.  This Court held that plaintiff's request for documents and information concerning the calls that UCB made to cellular phones was overly broad and, accordingly, stated that UCB was correct to produce documents within the limitations of its database.  [ECF 25 at pp. 4-7.]  Specifically, this Court denied a part of plaintiff's motion to compel and held that UCB was only required to produce the phone numbers related to calls that were flagged in its database as "wrong numbers" and not the plethora of information that was in plaintiff's discovery requests.  [*Id.*]

UCB fully produced that information to plaintiff, but plaintiff is now asking for something more extraordinary beyond what this Court has already determined as overly broad.  Because UCB's database does not allow for a query to be run to determine whether UCB made the calls from a system capable of being an autodialer, Plaintiff is asking UCB to shut down its business and create a new program—a program that has never existed—that will allow UCB's databases to be queried to determine whether UCB made calls from a system capable of being an autodialer.  Plaintiff's request does not stop there.  As a "compromise," plaintiff stated that UCB could shut down its business for a long enough period of time to allow its expert to have unfettered access to UCB's databases—which include personally identifiable information about debtors—in order to allow plaintiff's expert to extract all of the information in the databases and

1

create the requested program for plaintiff.  Both of the foregoing requests go well beyond FRCP 26 and 34, which simply require UCB to produce electronically stored information as it is kept in the usual course of business.  These statutes do not require a party to create a new program or allow the opposing party unfettered access to its databases that include irrelevant and personally identifiable information about persons who are not within the scope of the proposed class.  As stated above, UCB has already produced the information as it is kept in the usual course of business; and plaintiff's request is beyond usual.

Plaintiff's excessive discovery requests do not end with asking UCB to write a new program and provide its expert with unfettered access to UCB's databases.  Plaintiff has also sent UCB a deposition notice asking UCB to designate a corporate representative to testify about issues that the corporate representative has already testified about.  As a result, UCB seeks a protective order holding that: (1) UCB is not required to create a computer program that has never existed that will allow its database to be queried to determine whether it made calls using a dialer; (2) UCB is not required to shut down its business for an indefinite period of time and allow plaintiff to have unfettered access to all of UCB's databases in order to allow plaintiff to extract all of the information in UCB's database to allow plaintiff to create a computer program that has never existed that will allow UCB's database to be queried for dialer calls; and (3) plaintiff is not allowed to depose UCB's corporate representative on issues that plaintiff has or could have deposed UCB about during its prior deposition of UCB's corporate representative.

## II. PROCEDURAL HISTORY

In May 2016, plaintiff filed this lawsuit.  [ECF 1.]  The Complaint alleges that UCB violated the TCPA when it called her several times on her mobile phone using a pre-recorded message without consent to do so.  In July 2016, Plaintiff served UCB with interrogatories and

document requests.  (Exhibit 1 to Declaration of Keith J. Barnett "Barnett Decl.".)  Document request number 2 asked UCB to produce the following:

> All documents or data that concern or relate to any phone call, person or phone number responsive to interrogatory 1, such as call detail records, documents concerning where the phone number was obtained, documentation of whether you were on notice that the phone number was and documentation that shows you may have had consent to make such calls.

Interrogatory number 1 requests the following:

> Identify all outgoing calls (including attempted calls) for the set described below, including plaintiff.  Please include all data you have; by way of example, a complete answer is expected to include at least the following:
>
> a.  Dialer Info.  Identification of the equipment, third party and/or software used to make the call (e.g. Noble, Livevox, Avatar, ytel, Five9, Guaranteed Contacts, Aspect, Avaya), and the location for call origination/dialer;
>
> b.  Call Data.  Call detail information for the calls themselves, including the duration of the call, phone number called, the date and time of the call and the result of the call (e.g. no answer, message left, spoke with John Doe and he was not interested data, warm transfer etc.), and whom you spoke with, if anyone, and the substance of the conversation (including any request not to receive future communications);
>
> c.  Recipient.  Identifying information for the person you were trying to reach (e.g. name, business name, address, email, fax number, all phone numbers);
>
> d.  Call Purpose.  Information regarding the purpose of the call, including the creditor for whom the call was made, recording/script of what was said or intended to be said, recordings played, recording of the calls themselves;
>
> e.  Source of Phone Number.  The source(s) where you obtained the telephone number called and the nature of such relationship and the facts and circumstances surrounding such;

3

  f.  Consent.  Anything or testimony that may show the recipient's permission or consent to receive calls;

  g.  Vendors.  All third parties (e.g. vendors, dialer companies or telephone companies) that were in any way involved with the call, for example, whose insurance policies you may have sold to call recipients;

  h.  Caller ID. Information concerning the caller identification programming and display for such calls;

  i.  Dialer Location.  The physical location where any portion of such calls occurred (e.g. where the dialers are located, where the outbound call center is located, where the campaign was loaded into the dialer); and

  j.  Do Not Call Info.  Data concerning whether any person called ever notified you that you were calling the wrong number, or requested that you not call them.

All persons in the United States who: (a) UCB and/or someone on its behalf called at least twice; (b) and played the same or similarly created message to the voice mail left for plaintiff; (c) where the phone number was not obtained from the recipient of the call, as to the alleged debt being collected; (d) where at least one call was made on or after May 9, 2012.

(*Id*.)

  UCB objected to the foregoing discovery requests on among other grounds, that the requests are overly broad and unduly burdensome and oppressive.  (Barnett Decl. Exhibit 1.) Counsel for plaintiff and UCB met and conferred concerning the foregoing discovery requests along with other requests.  (Barnett Decl. ¶ 3.)  During the meet and confer, UCB informed counsel for plaintiffs that it could not query its database for all of the information requested. (*Id*.)  UCB informed counsel for the plaintiffs that it could only query the database for calls that were flagged as "wrong numbers," meaning that the consumer informed the UCB operator that UCB had dialed the wrong number.  (*Id*.)  During their meet and confer, plaintiff offered to

4

narrow the requests by seeking information for calls to cellular phones only and only calls to "wrong number" call recipients as identified in UCB's database. (*Id*.)

The parties did not completely resolve their discovery dispute and plaintiff filed a motion to compel with respect to interrogatory number 1 and document request number 2. [ECF 19.] In the motion to compel with respect to these requests, plaintiff argued that "UCB can query its database for all telephone numbers that were designated as wrong numbers since the class period beginning May 9, 2012" and plaintiff will determine the names and addresses of the 'wrong number' class members through performing reverse-lookups on the phone numbers through a class action administrator or issuing subpoenas to the cellular telephone companies to obtain the identities of the subscribers. [ECF 24 at p. 5.]

This Court denied plaintiffs' motion to compel with respect to these requests, stating that "[t]he extent of the information that plaintiff requests in Interrogatory 1 and Discovery Request 2 as originally drafted is overly broad." [ECF 25 at p. 6] This Court added that "Plaintiff purports to narrow her request to wrong number calls made to cell phones but still seeks to obtain detailed information related to each call. Defendant, however, has no mechanism for culling the information that plaintiff seeks, even for this narrower subset of calls." [*Id*.] This Court concluded that UCB "has met its burden of showing that it would be unduly burdensome to require it to comb through 278,000 accounts to find responsive information." [ECF 25 at p. 7.] UCB queried its database for calls made to phones in which the call recipient told UCB that UCB dialed the wrong number and produced the results to the plaintiff. (Barnett Decl. ¶ 5.) In addition to the results from the wrong number database, UCB produced a separate spreadsheet to the plaintiff that identified the names and contact information for people who threatened to sue UCB after telling UCB that it had dialed the wrong number. (*Id*.)

After UCB produced the results of the wrong number query and the separate spreadsheet identified above, plaintiff noticed the deposition of UCB's corporate representative. (Exhibit 2 to Barnett Decl.)  The deposition notice asked UCB to provide at least one corporate representative with respect to the following issues:

1. Actions taken as to Plaintiff's cell phone number, including how UCB and/or any creditor or third party obtained the phone number, the equipment used to make calls and the data that exists concerning such.

2. Defendant's policies, practices and procedures having to do with ensuring that it had data or documents showing that it had consent at the time it made a call to a particular telephone number, including calls made by Defendant or through vendors, for calls that were made or attempted at any time between May 9, 2012, and the present.

3. The existence, quality, scope and location of any databases, data, tables, columns or codes that relate to whether an outbound telephone call was made by you or on behalf of you.

4. The existence (or non-existence), quality, scope and location of any databases, data, tables, columns or codes that relate to the facts and circumstances under which UCB or its creditors or predecessors received phone numbers that were called between May 9, 2012, and the present, including but not limited to:

   a. Loan applications or other transaction-initiating or intake documents;
   b. Prior servicer/collector data;
   c. Creditor data or documents;
   d. Conversations on the telephone;
   e. Skip trace or credit bureau;
   f. ANI call capture;
   g. White pages, internet or similar;
   h. Any other source.

5. The existence, quality, scope and location of any databases, data, tables, columns or codes that relate to consent, or any absence or revocation of consent.

6

6. The existence, quality, scope and location of any databases, data, tables, columns or codes, policies, practices or procedures that relate to determining whether a particular phone number was a cellular number or not at the time of a call.

7. The data, databases, tables, columns and codes that were used to determine what phone numbers to call, and what phone numbers not to call, with regard to consent, and how the process of scrubbing phone numbers for consent or cell phone, and then calling numbers.

8. The existence, quality, scope and location of any databases, data, tables, columns or codes that relate to whether a phone number was associated with a debtor, or non-debtor.

9. Identification of any vendor or third party that may have possession, custody or control of any data that relates to telephone calls, the circumstances surrounding how telephone numbers were obtained, whether there had ever been a request to cease and desist or not to call and whether a phone number was a "wrong number."

10. The existence, quality, scope and location of any databases, data, tables, columns or codes that relate to requests not to call, including cease and desist requests.

11. UCB's document and data retention policies, practices and procedures having to do with any data associated with any account (such as those on which Meredith's cell phone was called), and to the extent any putative class member data has been lost, what happened to such.

12. The meaning, nature and content of any documents that have been produced at the time of the deposition, such as "account notes," call records and data keys and what other documents and data relate to the accounts on which calls were made that have not yet been produced (including but not limited to outcome or result codes, skip trace tables, audit tables, change tables).

(*Id*.)

UCB provided a corporate representative to testify about the foregoing issues. (Barnett Decl. ¶ 6.) Counsel for plaintiff asked UCB's corporate representative about matters that went

7

30547647

beyond the scope of the deposition notice. (Exhibit 3 to Barnett Decl.; Declaration of Mark Beirdneau "Beirdneau Decl." ¶¶ 6-7.) Specifically, counsel for the plaintiff asked UCB's corporate representative about whether UCB's database could be further queried to, among other things, provide information about whether UCB made the calls from a device capable of being a dialer. (*Id*.) Although the line of questions went beyond the scope of the deposition notice, counsel for UCB did not object and instruct the witness not to respond to the questions because the questions were relevant to the case overall and the corporate representative was the most knowledgeable person at UCB on those issues. (Barnett Decl. ¶ 6.) Simply put, UCB did not object to the questions in the interest of civility and avoiding the possibility of plaintiff asking for another deposition on the same issues. UCB's corporate representative responded to the questions by testifying that UCB's database could not be further queried to provide information about whether UCB made the calls from a device capable of being a dialer. (Beirdneau Decl. ¶¶ 6-7; Exhibit 3 to Barnett Decl..) When pressed by counsel for plaintiff, UCB's corporate representative speculated that a program could be written to allow such a query, but such a program would be extremely difficult and burdensome if at all possible. (*Id*.)

After the deposition, plaintiff asked UCB to produce a corporate representative for another deposition to testify about the following issues:

> 1. What data exists to develop as close to a complete list of outbound dialer and/or unattended calls as possible, including if necessary querying multiple data bases or writing a program.
> 2. What specific efforts may be useful or necessary to develop a list of outbound dialer and/or unattended calls.

Because plaintiff already asked UCB's corporate representative questions in the foregoing category during the December 2016 corporate representative deposition and plaintiff

8

30547647

did not commit to not asking the same questions in a second deposition, UCB filed this motion. (Exhibit 5 to Barnett Decl.)

Also after the deposition, plaintiff asked UCB whether the database could be further queried to provide information about whether UCB made the calls from a device capable of being a dialer. (Barnett Decl. ¶ 7 and Exhibits 4-5 thereto.) UCB, through counsel, told plaintiff that this was not possible. (*Id*.) Plaintiff then asked UCB to write a program. (*Id*.) UCB refused after pointing out the limitations stated during the deposition and the fact that the Federal Rules of Civil Procedure do not require a party to manipulate their database in order to produce documents. (*Id*.) Plaintiff then asked for unfettered live access to every record in every UCB database so plaintiff could have her own expert write the requested program on the off chance that a program can be written. (*Id*.) UCB refused and filed this motion. (*Id*.)

### III. ARGUMENT

**A. The Court Should Grant This Motion For A Protective Order Because Requiring UCB To Write A New Program For Its Existing Database Exceeds The Scope of Allowable Discovery.**

Under Rule 26(c) of the Federal Rules of Civil Procedure, good cause exists for this Court to issue a protective order "forbidding the disclosure or discovery." Namely, UCB is asking this Court to issue an order holding that: (1) it is not required to write a new program for its existing database; (2) it is not required to provide plaintiff with unfettered access to all of its databases for the purpose of allowing plaintiff to write a program; and (3) plaintiff cannot take the deposition of a UCB corporate representative on the issues in which plaintiff has already deposed UCB.

  **1.**  **Plaintiff's requests exceed the boundaries of permissible discovery under Rule 26 of the Federal Rules of Civil Procedure and the case law decided there under.**

Determining the proper scope of discovery falls within the broad discretion of the trial court.  *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir.1998).  The proponent seeking discovery bears the burden of proving that the information sought is relevant.  *Martin v. Select Portfolio Serving Holding Corp.*, No. 1:05–CV–273, 2006 U.S. Dist. LEXIS 68779, at *2 (S.D. Ohio September 25, 2006), citing *Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 154, 159 (D.D.C.1999).  "Although a plaintiff should not be denied access to information necessary to establish [her] claim, neither may a plaintiff be permitted 'to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'" *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir.2007), quoting *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir.1978).  A court must limit discovery when it "is unreasonably cumulative or duplicative" or "the burden or expense of the proposed discovery outweighs its likely benefit considering the needs of the case, the amount in controversy, the [party's] resources, the importance of the issues at stake in the litigation, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(b), (c)(i), (c)(iii); c.f. *Averett v. Honda*, 2009 U.S. Dist. Lexis 30179, *4 (S.D. Ohio, March 24, 2009) ("the court always has a duty to limit discovery under Rule 26(b)(2)(i)-(iii).")

In responding to document requests, the responding party has the best knowledge as to the location of documents and how they have been preserved or maintained.  As such, the responding party is in the best position to determine how to identify and collect these documents.  *Ford Motor Co v. Edgewood Properties, Inc*. 257 F.R.D. 418, 427 (D.N.J. 2009).  A responding

10

party need not review every scrap of paper or search under every rock; rather, it must conduct a diligent search for responsive material. As the Southern District of New York succinctly put it:

> there is no obligation on the part of a responding party to examine every scrap of paper in its potentially voluminous files in order to comply with its discovery obligations. Rather, it must conduct a diligent search, which involves developing a reasonably comprehensive search strategy. Such a strategy might, for example, include identifying key employees and reviewing any of their files that are likely to be relevant to the claims in the litigation.

*Treppel v. Biovail*, 233 F.R.D. 363, 374 (S.D. N.Y.) (2006).

### 2. Rule 34 of the Federal Rules of Civil Procedure limits the production of electronically stored information.

Rule 34 of the Federal Rules of Civil Procedure limits the production of electronically stored information to the manner they are "kept in the usual course of business." Rule 34 and does not require a party to write a program or manipulate a database in order to create an unnatural output. In fact, Rule 34 impliedly forbids such a requirement. Rule 34 states, in pertinent parts:

> (E) Producing the Documents or Electronically Stored Information. Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
> (iii) A party need not produce the same electronically stored information in more than one form.

11

### B. The Federal Rules Of Civil Procedure Preclude Requiring UCB To Write A New Program For Its Existing Database Or Provide Plaintiff With Unfettered Access To UCB's Databases.

Plaintiff is asking UCB to perform the unprecedented task of shutting down its business for an indefinite time and use company resources in order to write a new program for its databases that could speculatively allow database queries that have never been capable of being performed in these databases. (Beirdneau Decl. ¶ 7.) At best, plaintiff is simply asking UCB to provide electronically stored information ("ESI") that is **not** "kept in the usual course of business." At worst, plaintiff is completely ignoring and does not care about the discovery rules set forth in the FRCP and this Court's November 10, 2016 Order. UCB performed a diligent search for responsive information—namely people who told UCB that UCB dialed the "wrong number" during the relevant class period—as set forth in this Court's prior order—and provided that information to plaintiff. (Beirdneau Decl. ¶ 2; Barnett Decl. ¶ 5.) UCB's database is not capable of performing a more exacting query and it would be unprecedented to require it to do so. (Beirdneau Decl. ¶¶ 3-7.)

Plaintiff's proposed alternative is even more unprecedented. Plaintiff asks UCB to shut down its business for an indefinite period of time to allow plaintiff's expert to have full, unfettered access to UCB's databases—which contain personal information about consumers (social security numbers, medical information, credit card information, etc.)—so the expert can write a program that does not exist. (Barnett Decl. ¶¶ 6-7, Exhibits 4-5 thereto; Beirdneau Decl. ¶ 7.) Once again, plaintiff's request goes well beyond what is allowed under the FRCP.

Although no on point cases were found, it is clear that after a responding parry conducts a diligent search for responsive materials, mere speculation that additional responsive documents might be located somewhere else—here the creation of new programs to a company's legacy

12

database that never existed—is not justification to compel a responding party to undertake additional burdensome discovery. *Commerce Benefits Group, Inc. v. McKesson Corp.*, 2008 U.S. Dist. LEXIS 17372 (N.D. Ohio March 6, 2008); *Ford Motor Company v. Edgewood*, 257 F.R.D. 418, 427 (D.N.J. 2009) (finding that "a conclusory allegation based on nefarious speculation" that additional documents exist alone is not enough to justify additional burdensome discovery, especially late in the case and holding that it is not proper to "require a producing party to go to herculean and costly lengths … in the face of mere accusation to rebut a claim of withholding.") *Id*. at 428.  This is especially true when a responding party has already expended great effort to collect and produce a large volume of responsive documents. *See Coleman v. American Red Cross*, 23 F.3d 1091, 1098 (6th Cir. 1994) (holding that it is inappropriate to require a litigant to search every file that exists for any documents that might be of any relevance to any matter in the case, especially in light of the volume of material already produced); *see also, Ross v. Abercrombie*, 2008 WL 4758678, *2 (S.D. Ohio Oct. 27, 2008) ("At some point, given the large amount of time and money which has been spent so far on document production, it becomes the plaintiff's burden to show that the cost to review and produce even more documents is outweighed by their likely relevance to the key issues.")

"[C]onclusory allegation based nefarious speculation" that some additional material may exist is not enough to compel UCB to undertake additional burdensome discovery obligations. *Ford*, 257 F.R.D. at 428.  UCB has produced the results of the query.  UCB also produced a spreadsheet identifying people, by name and contact information, who threatened to sue UCB for dialing the wrong number. This Court should grant a protective order precluding the request that UCB create a new program or provide plaintiff with unfettered access to all of UCB's databases.

C.  **Plaintiff Has Already Deposed UCB's Corporate Representative On The Subjects That Are Enumerated In The New Deposition Notice.**

A deposition cannot exceed one seven-hour day without a court order.  Fed. R. Civ. P. 30(d).  This rule applies to all witnesses, including 30(b)(6) deponents.  *Id*.  Plaintiff tries to get around this fundamental rule by serving a deposition notice that contains different topics than the prior deposition notice and ignoring the fact that plaintiff has already deposed UCB's corporate representative on the proposed subjects.  (Barnett Decl. ¶¶ 6-7 and Exhibits 3-5 thereto; Beirdneau Decl. ¶¶ 6-7.)  The Court should not allow plaintiff to manipulate the spirit of Rule 30.  The Court should grant this motion and order that plaintiff is not allowed to depose UCB on issues in which she has already deposed UCB.

IV.  **CONCLUSION**

For all of the foregoing reasons, this Court should grant UCB's motion for a protective order.

Respectfully submitted this 15th day of March, 2017.

*/s/ Jason P. Ferrante*
Jason P. Ferrante (0078480)
MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN
127 Public Square, Suite 3510
Cleveland, OH 44114
(216) 912-3800
jpferrante@mdwcg.com

Keith J. Barnett (*admitted pro hac vice*)
Lindsey B. Mann (*admitted pro hac vice*)
TROUTMAN SANDERS LLP
600 Peachtree Street NE, Suite 5200
Atlanta, GA 30308
(404) 885-3000
keith.barnett@troutmansanders.com
lindsey.mann@troutmansanders.com

14

          Ethan G. Ostroff (*admitted pro hac vice*)
          TROUTMAN SANDERS LLP
          222 Central Park Ave., Suite 2000
          Virginia Beach, Virginia 23462
          (757) 687-7500
          ethan.ostroff@troutmansanders.com

          *Counsel for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the within and foregoing *Defendant's United Collection Bureau, Inc.'s Brief in Support of Its Motion for a Protective Order* was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record.

This 15th day of March, 2017.

*/s/ Jason P. Ferrante*
Jason P. Ferrante (0078480)

*Counsel for Defendant*