**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Deborah Meredith,** ) | **CASE NO. 1:16 CV 1102** |
| ) | |
| **Plaintiff,** ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| **Vs.** ) | |
| ) | |
| **United Collection Bureau, Inc.** ) | **Memorandum of Opinion and Order** |
| ) | |
| **Defendant.** ) | |

## INTRODUCTION

This matter is before the Court upon Plaintiff's Motion to Compel Defendant to Produce Class Data (Doc. 28, 35) and Defendant United Collection Bureau, Inc.'s Motion for Protective Order (Doc. 30). For the reasons that follow, Plaintiff's motion is GRANTED and Defendant's motion is DENIED.

## BACKGROUND

Plaintiff Deborah Meredith filed this putative class action lawsuit on May 9, 2016, alleging that Defendant United Collection Bureau violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). The TCPA makes it unlawful "to make any call (other

1

than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The
TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

Plaintiff alleges that Defendant, a debt collection service, initiated multiple telephone calls to her cellular telephone in an attempt to collect a debt. (Compl. ¶ 11). She alleges that she was unable to answer the calls and that Defendant left multiple voicemail messages for her. (*Id.* ¶ 15). Plaintiff claims that the messages were prerecorded and made using equipment that automatically and sequentially called a list of telephone numbers, obtained from a "skip-trace" or similar third-party source. (*Id.* at ¶¶ 17, 21). The recording was played when the dialing system detected that the call was answered by Plaintiff's voicemail. (*Id.* at ¶ 16). Plaintiff alleges that Defendant knew or should have known that she did not consent to receiving the calls. (*Id.* at ¶ 19). According to the complaint, Defendant has a policy, practice, or procedure of placing calls to cell phones regarding the collection of an alleged debt without the prior consent of the called parties. (*Id.* at ¶ 25).

Plaintiff asserts that Defendant's practice of using autodialed, prerecorded-voice collection calls using contact information obtained from its clients or third-party skip-trace services foreseeably results in Defendant making numerous wrong number calls to the cell phones of people other than the debtor, in violation of the TCPA. She seeks to represent individuals who received autodialed, debt collection robocalls from Defendant to their cell

phones without prior express consent.

This is not the parties' first discovery dispute. Previously, the Court ruled on Plaintiff's motion to compel, which raised numerous deficiencies with Defendant's responses to Plaintiff's discovery requests. In relevant part, the Court denied Plaintiff's request to compel Defendant to produce class information for "wrong number" call recipients as identified in Defendant's database. Plaintiff's request sought extremely detailed information about these calls, and Defendant stated that it would have to conduct a manual review of more than 278,000 accounts in order to respond to the request. The Court found that requiring Defendant to perform a manual review would be unduly burdensome and denied the motion to compel on this basis.

Thereafter, Plaintiff deposed Defendant's Chief Technology Officer Mark Beirdneau. During the deposition, Beirdneau testified that a program could, in fact, be written to run a query of its database to identify "wrong number" recipients of its autodialed, prerecorded-voice calls:

> Q. (MR. BURKE) Would it be possible to query … for all of the [prerecorded] FOTI Message Left dialer calls?
> A. Partly.
> Q. Explain.
> A. There's not the ability to run a query that would give you that information. That would require a program because of the format that the notes are stored in. That's one of the files that isn't query(able).
> Q. Okay. But you can run a program or a script that pulls all the rows that contain the string, for example, FOTI M-S-G L-F-T; is that right?
> A. Partly.
> Q. Okay.
> A. The word FOTI message, you know, left is not physically stored in the notes. What's stored in the note is what is called an action code. So that way we don't have to, you know, take up so much room, you know, with the verbiage.
> Q. Okay. So then could you do a query to pull out all of the notes that have that corresponding action code?
> A. Yes.
> Q. And then, maybe, you could do a compare of that result – phone numbers in

> that result – with the phone numbers in the query, such as 556 for wrong number calls, right?
> A. Yes.
> Q. Or I could do that.
> A. Right.

Beirdneau Dep., at 54:21-55:24 (Dec. 6, 2016); *see also id.* at 30; 56-58; 61-62 (one could take list of account numbers and run them through program to pull respective account notes).

Following Beirdneau's deposition, Plaintiff asked Defendant to write the program that would produce the class data of wrong number calls and associated account notes for the class period. In lieu of that, Plaintiff asked Defendant to produce the relevant portions of its database to Plaintiff so that her expert could write the program and conduct the query himself. She also proposed that Defendant forego production of the class information until after class certification and stipulate to numerosity under Rule 23. Defendant declined all of Plaintiff's proposals. Plaintiff then filed its motion to compel, asking the Court to compel Defendant "to produce those limited portions of its database that would permit Plaintiff to determine how many, and which, calls Defendant made to wrong numbers using its dialer or a prerecorded voice message." (Doc. 35, at 5). Defendant opposes Plaintiff's motion and has also filed a motion for protective order.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 26(b)(1) sets forth the permissible scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "[T]he scope of discovery under the Federal Rules of Civil Procedure is

4

traditionally quite broad." *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). After making a good faith attempt to resolve a dispute, a party may file a motion to compel discovery under Rule 37 of the Federal Rules of Civil Procedure if it believes another party has failed to respond to discovery requests or that the party's responses are evasive or incomplete. Fed. R. Civ. P. 37(a). Under Rule 26(c), a court may, "for good cause," issue a protective order to "[a] party or any person from whom discovery is sought," to prevent "annoyance, embarrassment, oppression, or undue burden or expense." In ruling on discovery-related motions, a trial court has broad discretion in determining the scope of discovery. *Lewis*, 135 F.3d at 402; *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.").

## ANALYSIS

The information that Plaintiff seeks is relevant to establishing the size and nature of the class that she wants to represent.[1] Defendant does not dispute this, nor has it suggested any other method by which Plaintiff can obtain the information that she requests. Defendant, however, objects to Plaintiff's request because Rule 34 limits the production of electronically stored information ("ESI") to the manner in which it is "kept in the usual course of business." (Doc. 30, at 11) (quoting Fed. R. Civ. P 34). It argues that, by asking it to write a program that does not already exist, Plaintiff is asking for ESI that is not kept in the usual course of business. It also states that writing and testing such a program "would take a few days" and could harm its ability to conduct its business during regular business hours. (Beirdneau Dec. ¶ 4). Should Plaintiff's

---

[1] In addition, the information is relevant to the relief available under the TCPA because the statute provides for damages on a per-violation basis. 47 U.S.C. § 227(b)(3).

expert, Jeffrey Hansen, be allowed to write the program, it questions his ability to do so because its database has been customized and it is not clear that Hansen is familiar with the version of CUBS that Defendant uses. (*See* Doc. 41, Evidentiary Objections to Declaration of Jeffrey A. Hansen in Support of Plaintiff's Motion to Compel).

The Court is not persuaded by Defendant's objection that the information Plaintiff seeks requires it to produce ESI in a manner in which it is not normally kept. Courts have long recognized that defendants may be required under the Federal Rules to create computer programs to search an existing database for relevant information. *See Anti-Monopoly, Inc. v. Hasbro, Inc.*, 1995 WL 649934, at *2 (S.D.N.Y. Nov. 3, 1995) ("The law is clear that...the producing party can be required to design a computer program to extract the data from its computerized business records, subject to the Court's discretion as to the allocation of the costs of designing such a computer program."). For example, in *Apple Inc. v. Samsung Electronics Co. Ltd.*, the court noted:

> "[w]hat emerges from the parties' arguments is that Apple does have financial databases that it could query to generate at least some of the reports sought by Samsung. While this court has held that a party should not be required to create completely new documents, that is not the same as requiring a party to query an existing dynamic database for relevant information. Courts regularly require parties to produce reports from dynamic databases, holding 'the technical burden...of creating a new dataset for the instant litigation does not excuse compelling production.'"

2013 WL 4426512, at *2-3 (N.D. Cal. Aug. 14, 2013) (ultimately holding that the reports did not have to be produced because they would be of little to no benefit to Samsung, who had already submitted its expert report on damages). Moreover, courts have allowed ESI discovery even where it would take many days to produce the data. *See, e.g., Gonzales v. Google, Inc.*, 234 F.R.D. 674 (N.D. Cal. 2006) (allowing ESI discovery where producing party claimed it would

take eight full days of engineering time to produce the data that the government sought); *Mervyn v. Atlas Van Lines. Inc.*, 2015 WL 12826474, at *6 (N.D. Ill. Oct. 23, 2015) (requiring production even where producing party claimed it would take a week to create the script, a week to run the script, and a week to check the results).

Plaintiff has met her burden of showing that the discovery she seeks is relevant and necessary to her claim. While Defendant has shown that there will be some burden to it in responding to Plaintiff's request, the burden does not outweigh the likely benefit of production. As such, Defendant has not shown that there is good cause for issuing a protective order. Defendant must, therefore, either write the program that would produce the class data of wrong number calls and associated account notes for the class period or produce the relevant portions of its database to Plaintiff so that her expert, Jeffrey Hansen, can write the program and conduct the query himself. Should Defendant choose to write the program itself, Plaintiff must bear the reasonable cost of doing so. Should Defendant choose to give Plaintiff access to its database so that Hansen can write the program and perform the query, Defendant must provide sufficient information to Plaintiff so that Hansen can understand the database. As Defendant noted in its objections to Hansen's declaration, only Defendant knows how it implemented its own database. Therefore, Defendant must either make an individual who has knowledge of its database available for deposition–even if this means Beirdneau must be deposed again–or respond to Plaintiff's Interrogatories Nos. 6 and 7 and Request for Production No. 4. Finally, to minimize the burden to Defendant of running the program on its database, it shall be run during non-business hours.

7

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Compel Defendant to Produce Class Data (Doc. 28, 35) is GRANTED and Defendant United Collection Bureau, Inc.'s Motion for Protective Order (Doc. 30) is DENIED.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 4/13/17