**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Deborah Meredith,** | **CASE NO. 1:16 CV 1102** |
| **Plaintiff,** | **JUDGE PATRICIA A. GAUGHAN** |
| Vs. | |
| **United Collection Bureau, Inc.** | **Memorandum of Opinion and Order** |
| **Defendant.** | |

## INTRODUCTION

This matter is before the Court upon Plaintiff Deborah Meredith's Motion to Compel Discovery (Doc. 62). This is an action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice...to any telephone number assigned to a ... cellular telephone service." 42 U.S.C. § 227(b)(1)(A)(iii). For the reasons that follow, Plaintiff's motion is GRANTED IN PART AND DENIED IN PART.

**BACKGROUND**

Plaintiff asserts that Defendant United Collection Bureau ("UCB") violated the TCPA by initiating multiple telephone calls to her cell phone in an attempt to collect a debt. The debtor from whom UCB sought to collect was not Plaintiff. UCB contacted Plaintiff because the debtor's cell phone number had been reassigned to her. Plaintiff claims that UCB called her on three occasions and left a message on her cell phone each time. The messages explained that UCB is a debt collector, instructed her to call UCB back, and provided a reference number for her to use when she returned the call. Plaintiff called UCB after the third message and informed it that she is not the debtor whom it was trying to reach. Plaintiff filed this case as a putative class action. She seeks to represent the following class:

> All persons in the United States who: (a) Defendant and/or someone on Defendant's behalf called at least twice on their cellular phone; (b) and played the same or similarly-created message to the voice mail left for plaintiff; (c) where the phone number was not obtained from the recipient of the call, as to the alleged debt being collected; (d) where at least one call was made in the period that begins four years before the date of filing this Complaint.

The parties have had several disputes about Plaintiff's discovery requests pertaining to class data. Plaintiff sought class data in Interrogatory 1, which asked UCB to "[i]dentify all outgoing calls (including attempted calls) *for the set described below*, including plaintiff. Please include all data you have...." (Doc. 19-2, at 6) (emphasis added). After listing the broad range of information that she was seeking, Plaintiff then described the relevant "set," which was identical in relevant part to her proposed class definition. Document Request 2 then asked for "[a]ll documents or data that concern or relate to any phone call, person or phone number responsive to interrogatory 1." In the course of discovery, Plaintiff agreed to limit the request to class information for "wrong number" call recipients as identified in UCB's database.

2

UCB initially objected to these requests as unduly burdensome, stating that it would be impossible to electronically search its databases for the relevant information and that it would have to do so manually. The Court denied Plaintiff's initial motion to compel, finding that requiring UCB to perform a manual search would be unduly burdensome. Plaintiff then deposed UCB's Chief Technology Officer Mark Beirdneau, who testified that it would, in fact, be possible to write a program to run a query of its database to identify "wrong number" recipients of its autodialed, prerecorded-voice calls. As a result, the Court granted Plaintiff's second motion to compel, ordering UCB to "either write the program that would produce the class data of wrong number calls and associated account notes for the class period or produce the relevant portions of its database to Plaintiff so that her expert...can write the program and conduct the query himself." (Doc. 46, at 7). If UCB performed the search itself, the Court ordered Plaintiff to bear the reasonable costs of doing so.

UCB chose to write the program and perform the search. According to Plaintiff, UCB refused to provide test samples or coordinate with Plaintiff in the data extraction process. UCB asked Beirdneau to use Plaintiff's proposed class definition to run the query. Beirdneau created a multi-step process to run the query. Plaintiff states that UCB originally produced data showing 1,307,659 "wrong number" calls to 1,076,533 unique phone numbers. It then provided different data for 808,604 "wrong number" calls to 632,430 unique cell numbers. UCB then narrowed the results to include only accounts where at least two "FOTI" voicemails were left. (Beirdneau Decl. ¶ 7).

UCB states that it ran its search through each of its relevant databases. It provided the following explanations for each of the databases that were searched as well as the correlating

3

results:

- BOA database: This database houses calls made to Resurgent and PSECU accounts. No hits for the query searching for at least two dialer calls in which a message was left and UCB was informed that it had dialed the wrong number.

- CHASE database: This database houses calls made on behalf of Chase. No hits for the query searching for at least two dialer calls in which a message was left and UCB was informed that it had dialed the wrong number.

- GOV database: This database houses debt collection calls that UCB makes on behalf of state and local municipalities. The query reveals that UCB made a total of 166 calls to 20 accounts in which at least two calls were made using a dialer in which voicemail messages were left and someone told the UCB operator that UCB had dialed the wrong number.

- UCB database: This database houses all of the medical debt collection and utility debt collection call information. The query reveals that UCB made 164 calls to 27 accounts in which at least two calls were made using a dialer in which voicemail messages were left and someone told the UCB operator that UCB had dialed the wrong number. Ten of the calls relate to a phone number, [XXX-XXX-XXXX], for which UCB has already been sued in a separate lawsuit. Seventeen calls relate to another phone number, [XXX-XXXXXXX], for which UCB has already been sued in another lawsuit.

- UCBFS database: This database houses calls made on behalf of Citi. No hits for the query searching for at least two dialer calls in which a message was left and UCB was informed that it had dialed the wrong number. Barnett Decl. at ¶ 5, Ex. A.

After eliminating accounts where customers had previously sued UCB and released further claims against it, the query yielded 48 individual accounts matching the search criteria. UCB provided the information to Plaintiff in a redacted .pdf format "so that certain personal information associated with each account remained private." (Doc. 63, at 7-8). Plaintiff had requested that the account notes be produced in delimited TXT or CSV format. UCB sent Plaintiff a bill for $8,000 for its work in performing the queries.

Thereafter, Plaintiff filed the motion to compel currently before the Court. UCB opposes

4

Plaintiff's motion.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 26(b)(1) sets forth the permissible scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "[T]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). After making a good faith attempt to resolve a dispute, a party may file a motion to compel discovery under Rule 37 of the Federal Rules of Civil Procedure if it believes another party has failed to respond to discovery requests or that the party's responses are evasive or incomplete. Fed. R. Civ. P. 37(a). In ruling on such a motion, a trial court has broad discretion in determining the scope of discovery. *Lewis*, 135 F.3d at 402.

## ANALYSIS

### A. Scope of UCB's query

The parties dispute the scope of the discovery that UCB is required to produce in compliance with this Court's Order of April 13, 2017, which granted Plaintiff's second motion to compel. UCB argues that it was only required to produce information that would identify putative class members consistent with the class definition in Plaintiff's complaint. Plaintiff believes that the Court ordered UCB to produce all "'wrong number' calls UCB made using its dialer or with an unattended message to Plaintiff and the class." (Doc. 62, at 1).

The issue in Plaintiff's second motion to compel was whether UCB had complied with Plaintiff's class data discovery requests in Interrogatory 1 and Document Request 2.[1] In Interrogatory 1, Plaintiff herself limited the information that she sought regarding class data to the proposed class definition. Thus, when this Court granted the motion to compel, it only ordered UCB to produce the "*class data* of wrong number calls and associated notes for the class period." (Doc. 46, at 7) (emphasis added). Based on Plaintiff's own discovery requests, the "class data" that the Court ordered UCB to produce was limited to Plaintiff's definition of the class–the Court would not order UCB to produce more information than Plaintiff herself had requested. Moreover, the information that Plaintiff believes the Court ordered UCB to produce and that she now seeks appears to be significantly broader than her own proposed class definition. Requiring UCB to produce such information would, therefore, not be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Thus, Plaintiff's motion to compel is denied to the extent it asks the Court to compel production of all "'wrong number' calls UCB made using its dialer or with an unattended message to Plaintiff and the class."

Nevertheless, the Court does have concerns with UCB's production. Specifically, UCB limited its query to only people who received "at least two FOTI voicemails." (Beirdneau Decl. at ¶7). Plaintiff's proposed class definition does not limit the class in this way. Rather, the class is first limited to individuals where UCB or someone on its behalf made at least two calls to the individual's cell phone. Then, from this set of individuals, it is further limited to situations where

---

[1] Plaintiff's motion, entitled "Motion to Compel Defendant to Produce Class Data," addressed Plaintiff's "discovery requests to UCB aimed at identifying class members and the calls Defendant made to them in violation of the TCPA." (Doc. 35, at 5) (identifying Interrogatory 1 and Document Request 2 as the discovery requests at issue in the motion).

UCB "played the same or similarly created message to the voicemail left for plaintiff."[2] This portion of the definition does not limit the calls to only situations where two voicemail messages were left. Rather, as long as UCB played the same language as the language in the messages left for Plaintiff at least one time, the information is discoverable. That is true whether the language was left as a voicemail message or played to a live person who answered the phone. Thus, UCB is ordered to re-run its query to produce this information. In performing this query, the Court agrees with Plaintiff that UCB must search for all calls that were "wrong number" calls, as determined by any method that UCB uses for designating such calls: wrong number coding, freehand account notes, and their removal by the system. (*See* Doc. 64, at 2) (citing Beirdneau Dep. at 29, 35). Prior to performing the data extraction process, UCB must meet and confer with Plaintiff's counsel and her expert regarding the process. The revised query will be done at UCB's expense.

Although UCB's initial query was too narrow, the Court is satisfied that it adequately explained its method for searching its databases. For this reason, and because UCB must perform a new query after meeting and conferring with Plaintiff's counsel and her expert, the Court denies Plaintiff's request to order UCB to sit for a deposition regarding UCB's data and the process it undertook to extract the data.

---

[2] The Court agrees with UCB that it need only produce data where voice messages like the ones Plaintiff received were played because "her proposed language in the class definition is too vague and ambiguous to allow UCB to determine the scope of what other messages would be adequately similar to the ones Plaintiff received."

**B. Format of UCB's responses**

Plaintiff requested that UCB's data be produced in a format that can be "reviewed and manipulated in a way that still maintains its integrity." (Doc. 64, at 2) ("Plaintiff asked that UCB's data be produced in delimited TXT or CSV format...Plaintiff needs UCB's data to be produced *as data*–not in a fixed PDF–in order to permit her expert to run queries and physically join and analyze it in comparison to UCB's separately-produced call data.").

According to Beirdneau, "the account level information cannot be extracted and then imported into an Excel spreadsheet with the other call data." (Beirdneau Decl. ¶ 13). Based on Beirdneau's statement, UCB claims that "there was no other way UCB could produce the account level information" other than in the fixed .pdf format that it produced. (*Id.*)

Rule 34(b)(1)(C) allows a requesting party to "specify the form or forms in which electronically stored information is to be produced." Moreover, according to the Advisory Committee Notes, "[i]f the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature." Advisory Comm. Notes to the 2006 Amendments. The information that UCB produced is ordinarily maintained in a way that makes it searchable by electronic means, but the fixed .pdf document that UCB produced removes this feature. Beirdneau stated only that the requested data cannot be extracted and then imported into an *Excel* spreadsheet; he did not testify that it is impossible to produce the data in a searchable format. Thus, when UCB produces the results of the new query that the Court has ordered, it must do so in a manner that is electronically searchable. In addition, in light of the protective order in place in this case, UCB has not adequately explained the need for redacting the material

8

that it is producing. Thus, the data must be produced without redactions.

### C. Itemization of UCB's bill for initial query

UCB states that it will provide the additional details that Plaintiff requests regarding its $8,000 bill for running the initial query and will work with Plaintiff's counsel to reach a reasonable resolution on this issue without Court intervention.

### **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Compel Discovery (Doc. 62) is GRANTED IN PART AND DENIED IN PART. Expert discovery and class certification briefing deadlines will be reset at the telephonic status conference on June 11, 2018.

IT IS SO ORDERED.

Dated: 5/31/18

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Court
Chief Judge