**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Deborah Meredith,** | ) | **CASE NO. 1:16 CV 1102** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **United Collection Bureau, Inc.,** | ) | **Order** |
| | ) | |
| **Defendant.** | ) | |

### INTRODUCTION

This matter is before the Court upon Plaintiff's Motion to Enforce Settlement Agreement (Doc. 86). Also pending is Defendant's Cross-Motion to Enforce Settlement Agreement (Doc. 91). This case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227. For the reasons that follow, plaintiff's motion is DENIED, with the exception of plaintiff's request for completion of confirmatory discovery. Defendant's motion is GRANTED, with the exception of plaintiff's request that the Court confirm the number of members on the Class List.

### ANALYSIS

Plaintiff Deborah Meredith filed this class action lawsuit against defendant United

Collection Bureau, Inc. alleging wrongdoing in connection with telephone calls placed by defendant to wrong number cell phones.  Generally speaking, UCB collects debts on behalf of its customers.  The customers provide contact information for the debtors, including cellular telephone numbers.  Often, however, cellular telephone service companies "recycle" cellular telephone numbers.  As such, the information on file with UCB is stale and the individual receiving the call is not, in fact, a debtor.  Additionally, UCB uses an autodialer to place telephone calls.  Sometimes the call involves a prerecorded message directed at collecting the debt.  It appears that on other occasions, an autodialer is used to place the call, but a live person either discusses the situation with the call recipient or leaves a voice message.

After long and contentious litigation, the parties entered into a signed settlement agreement (sometimes, "Agreement").  The settlement agreement contains a provision allowing for "confirmatory discovery," which permits plaintiff to verify the number and identity of the class members.  During this process, a dispute arose and the parties now cross-move to enforce the settlement agreement.  Each opposes the other's motion.[1]

The primary dispute centers on the definition of the settlement class.  The relevant provision in the settlement agreement is as follows:

> 4. "<u>Settlement Class</u>" means, for settlement purposes only and subject to Court approval, all non-customers (1) to whom UCB placed one or more calls, (2) directed to a number assigned to a cellular telephone service, but not assigned to the intended recipient of UCB's calls, (3) by using UCB's IAT CT Center dialer, (4) from May 9, 2012, through October 5, 2018, limited to the 138 class members

---

[1] Plaintiff asks that the Court strike defendant's cross-motion as it was filed beyond the deadline set by the Court for the parties to submit a motion for preliminary approval of the class.  Plaintiff's request is denied.  The Court will consider defendant's cross-motion to enforce.

2

>on the Class List.
>
>The discovery in this case revealed, and UCB represents, that there are 138 unique phone numbers that fall within the Settlement Class as defined above, with a total of 420 prerecorded-voice calls to those 138 numbers. This is the "Class List." Settlement Class Counsel or the Settlement Administrator (as defined below) will identify the members of the Settlement Class based upon the information, through discovery, that UCB provided to Settlement Class Counsel.

The settlement agreement further provided plaintiff with the right to "confirm" the number of cell phone numbers and calls that fall into the "Class List:"

>30.   Confirmatory Discovery: This Settlement is subject to confirmatory discovery. The parties agree to conduct discovery in the form of a deposition and up to two interrogatories to confirm the number of cell phone numbers and calls that fall into the Class List as defined herein. If there are additional calls or accounts identified, above the 420 calls to 138 unique cell numbers, Defendant agrees to increase the Settlement Fund by $500 per respective call.

Based on the foregoing provisions, plaintiff argues that the class includes those individuals who received a call based on UCB's IAT CT Center dialer. In other words, the class includes *all* autodialed calls, regardless of whether UCB played a recorded message or used a live person to discuss the debt. Plaintiff claims that the parties agreed to create the Class List in order to facilitate the settlement. According to plaintiff, it knew that discovery to date included only pre-recorded message calls. But, plaintiff claims that the language in the Agreement is not *limited* to those calls.

On the other hand, defendant argues that the Class List, which is part of the definition of "Settlement Class," is plainly limited to 138 unique phone numbers with a total of 420 *prerecorded*-voice calls. (Emphasis added). Because confirmatory discovery is directed to *confirming* the "Class List," the parties agreed to include on the Class List only those individuals who received a prerecorded-voice call. In the alternative, defendant argues that the settlement

3

agreement is ambiguous and there was no meeting of the minds with respect to the class definition.

The parties agree that Ohio law applies to this dispute.  (Agreement at ¶ 31).  Pursuant to Ohio law:

> A settlement agreement is a contract designed to terminate a claim by preventing or ending litigation.  The law highly favors settlement agreements, and a trial judge generally has discretion to promote and encourage settlements to prevent litigation.  Because a settlement agreement constitutes a binding contract, a trial court has authority to enforce the agreement in a pending lawsuit.

*Infinite Security Solutions, LLC v. Karam Properties*, II, Ltd., 37 N.E.3d 1211, 1216 (Ohio 2015).  "Summary enforcement of a settlement agreement for which there is not dispute as to the terms of the agreement is the only appropriate judicial response, absent proof of fraud or duress." *RE/MAX International, Inc., v. Realty One, Inc.*, 271 F.3d 633, 650 (6th Cir. 2001).

> A contract is to be interpreted to give effect to the intention of the parties.  It is a fundamental principle in contract construction that contracts should be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language.  The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement.

Courts are to construe a settlement agreement as a whole and must "give effect to each and every part of it."  *Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Authority*, 678 N.E.2d. 519, 527 (Ohio 1997).  In so doing, the Court should "avoid any interpretation of one part which will annul another part."  *Id*.  Moreover, where the terms are clear and unambiguous, the Court may not resort to extrinsic evidence to create an ambiguity.  *PNC Bank, N.A., v. Springboro Med. Arts, Inc.*, 41 N.E.3d 145, 153 (Ohio Ct. App. 2015).

Upon review, the Court agrees with defendant that the Agreement is clear and unambiguous and that the class includes only calls involving pre-recorded messages.  The class

4

definition is set forth in two paragraphs. The first paragraph contains four parts: (1) people who defendant called; (2) on a cellular telephone number belonging to someone else; (3) using an autodialer; (4) during a specified time period, *limited to the 138 class members on the Class List*.

Thus, the "settlement class" is clearly and unambiguously limited to the members on the Class List and resort to the definition of "Class List" is required to further determine the members of the class. On this point, the Agreement provides as follows, "[t]he discovery in this case revealed, and [defendant] represents, that there are 138 unique phone numbers that fall within the Settlement Class as defined above, with a total of 420 prerecorded-voice calls to those 138 numbers. This is the "Class List." Thus, the Class List includes only 420 prerecorded-voice calls. This language would be superfluous and entirely unnecessary if the "settlement class" was not so limited. There would simply be no reason to include the phrase "prerecorded-voice calls." If, as plaintiff urges, the class included all autodialed calls, resort to the Class List would make no sense whatsoever. There would simply be no reason to include any reference to what "discovery in this case revealed" because the discovery (as both parties argue) was limited to prerecorded-voice calls. Thus, had the parties intended that the class be defined to include all autodialed class, the number of prerecorded voice calls would be wholly irrelevant and have no bearing whatsoever on the nature of the class.

Moreover, the Agreement provides that the plaintiff may take very limited "confirmatory" discovery in order to "confirm the number of cell phone numbers and calls that fall into the Class List." Again, the Class List identifies only prerecorded-voice calls. It would simply not make sense that the parties intended to "confirm" an entirely different list–, *i.e.*, one

that includes *all* autodialed calls. A list of all autodialed calls does not exist and, therefore, could not be "confirmed."

Plaintiff argues that the Agreement includes a "Class List" in order to avoid any ascertainability problems and to keep the class from "being wishy-washy and open-ended." It appears that plaintiff is claiming that the Class List was added simply to note that the settlement is limited to identifiable people. But, regardless of the reason for the inclusion of the provision, the fact remains that the Class List is part and parcel of the definition of Settlement Class. Further, the Court is at a loss as to why noting that there are a total of 420 prerecorded voice calls would solve any ascertainability problems that might exist with respect to a class containing autodialed voice-made calls.

Similarly, plaintiff's argument that the Class List is somehow a separate part of the definition of "Settlement Class" is rejected. Plaintiff points out that the second paragraph in the definition, *i.e.*, the paragraph that defines "Class List," provides that "there are 138 unique phone numbers that fall within the Settlement Class *as defined above*..." (Agreement ¶ 4)(emphasis added). In other words, it appears that plaintiff claims that the Class List is not actually part of the definition of "Settlement Class." Plaintiff's argument is unavailing. The fourth part of the first paragraph in the "Settlement Class" definition, expressly provides that the class is "limited to the 138 class members on the Class List." Thus, contrary to plaintiff's position, both paragraphs are directed at the contents of the Class List.

Based on the foregoing, the Court finds that the settlement class is limited to prerecorded-voice calls. This conclusion is the only result that gives meaning to all of the terms in the Agreement, including the definition of "Class List," which contains only prerecorded-

voice calls.

Plaintiff argues that other provisions support her position that the parties intended to settle on behalf of all autodialed calls. Specifically, plaintiff points out that the "Nature of the Litigation" provision indicates that the plaintiff alleges that defendant "violated the TCPA by making calls to the cellular telephone numbers of a nationwide class of individuals using an automatic telephone dialing system or an artificial prerecorded voice." Plaintiff further notes that the release provided in Paragraph 8 extends to claims involving the use of "automated equipment or prerecorded messages." According to plaintiff, this demonstrates the parties' intent to settle on behalf of all autodialed calls.[2] The Court disagrees. The "Nature of the Litigation" provision generically describes the litigation. And, often in litigation, parties obtain releases for all claims even if a settlement is based on fewer claims. Thus, it is not illogical that the plaintiff agreed to receive settlement funds for autodialed prerecorded-voice calls she received in exchange for a release of any claim she may have with respect to autodialed live-voice calls she received. Of course, the release would only be enforceable against individuals falling within the class definition. Thus, it does not appear that defendant would be able to enforce this release against an individual who received only autodialed live-voice calls, as that individual is not a member of the class. As such, the Court does not find anything inconsistent about these provisions and the construction of the Agreement's class definition as set forth

---

[2] Plaintiff argues that the inclusion of the phrase "automated equipment" demonstrates the parties' intent to settle on behalf of all autodialed calls. Otherwise, the words "automated equipment" are rendered superfluous. But, the converse is also true. Had the parties intended to simply settle all autodialed calls, the word prerecorded would be superfluous. Thus, plaintiff's argument is not well-taken.

7

above.

The same holds true with respect to the class notice form attached as Exhibit 2 to the Agreement.  The notice essentially tracks the Agreement.  Part I describes the nature of the lawsuit and informs potential class members as to why notice is being received.  The language indicates that defendant "may have made wrong-number calls to [the recipient's] cell phone number using its IAT CT Center dialer," and that the recipient "may be a member of the class."  But, in part II, the class notice further describes what the lawsuit is about and contains the exact same two-paragraph definition of "Settlement Class" as discussed above.  Thus, there is nothing inconsistent about the class notice and the manner in which the Court construes the class definition.

Having reviewed the Agreement and finding it to be clear and unambiguous, the Court will not resort to any extrinsic evidence cited by the parties.  Based on the foregoing analysis, the Court finds that the Settlement Class is limited to recipients of prerecorded messages.

**CONCLUSION**

For the foregoing reasons, the Court construes the Agreement as set forth herein.  Having resolved this issue, the Court rules as follows with respect to the parties' remaining requests:

(1) Plaintiff's request for production of "all of [defendant's] call and account related data" is DENIED;

(2) Plaintiff's request to compel the completion of the "still-open confirmatory deposition and permit Plaintiff the remaining interrogatory the parties agreed upon in the Agreement" is GRANTED.  The parties must complete the deposition and defendant must respond to the remaining interrogatory as set forth in the Agreement;

(3) Plaintiff's request for preliminary approval of the Agreement and that notice to class members be issued is DENIED at this time. The Court previously instructed plaintiff to refile this aspect of her motion after the Court resolved the dispute surrounding the meaning of the Agreement. Plaintiff is to file her motion for approval within 14 days of the entry of this Order;

(4) Defendant's request that the Court confirm that the Class List consists of 597 messages is DENIED at this time. The Court cannot simply accept defendant's word on this issue, especially given that the confirmatory discovery appears incomplete.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge
Chief Judge

Dated: 6/18/19