**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEBORAH MEREDITH, | ) | |
| Plaintiff, | ) | 1:16-cv-01102-PAG |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED COLLECTION BUREAU, INC., | ) | Judge Gaughan |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR**
**<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

I.      BACKGROUND ....................................................................................................1

     A.    Background ................................................................................................1

     B.    The Settlement ..........................................................................................3

     C.    Confirmatory Discovery ...........................................................................4

II.     LEGAL STANDARD..........................................................................................4

III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT. .............5

     A.    This Court should preliminarily approve the Settlement...........................5

           1.    Plaintiff and Class Counsel have and will adequately represent the Class. ..............................................................................5

           2.    The Settlement was negotiated at arm's-length, and there has been no fraud or collusion. ........................................................6

           3.    The Settlement provides substantial relief for the Class............................7

                i.    The Settlement is preferable to continued litigation. .......................7

                ii.    The method of providing relief is effective. ...................................8

                iii.    The proposed award of attorneys' fees is fair and reasonable. ........9

                iv.    The Settlement treats all Class Members fairly. ............................10

     B.    The Settlement Class satisfies Rule 23. ..................................................12

     C.    The notice plan satisfies the requirements of Rule 23 and due process requirements..................................................................................15

IV.    CONCLUSION.................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>Cases</u>

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
No. 08-248 (S.D. Cal. Sept. 28, 2012) (Dkt. No. 137) ........................................................ 12

*Bee, Denning, Inc. v. Capital Alliance Grp.*,
310 F.R.D. 614 (S.D. Cal. 2015) .................................................................................... 15

*Bennett v. Behring Corp.*,
96 F.R.D. 343 (S.D. Fla. 1982) ....................................................................................... 8

*Bennett v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984) ........................................................................................ 8

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ......................................................................................... 14

*Brady v. LAC, Inc.*,
72 F.R.D. 22 (S.D.N.Y. 1976) ....................................................................................... 15

*Crawford v. TRW Auto. U.S. LLC*,
No. 06-14276, 2007 WL 851627 (E.D. Mich. Mar. 21, 2007) .......................................... 13

*Daffin v. Ford Motor Co.*,
458 F.3d 549 (6th Cir. 2006) .................................................................................... 13, 15

*Davidson v. Henkel Corp.*,
302 F.R.D. 427 (E.D. Mich. 2014) ................................................................................. 13

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .................................................................................................... 15

*Estrada v. iYogi, Inc.*,
No. 13-1989, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015) ............................................... 12

*Faught v. Am. Home Shield Corp.*,
668 F.3d 1233 (11th Cir. 2011) ..................................................................................... 16

*Franklin v. Midland Funding, LLC*,
No. 10-91, 2011 WL 3557033 (N.D. Ohio Aug. 12, 2011) ................................................ 6

*Gehrich v. Chase Bank USA, N.A.*,
316 F.R.D. 215 (N.D. Ill. 2016) .................................................................................... 11

*Hall v. Frederick J. Hanna & Assocs., P.C.*,
No. 15-3948, 2016 WL 2866081 (N.D. Ga. May 10, 2016) ............................................... 5

*Humphrey v. Stored Value Cards*,
No. 18-1050, 2018 WL 6011052 (N.D. Ohio Nov. 16, 2018) ........................................... 14

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) ......................................................................................... 14

*In re Checking Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ................................................................. 12

*In re Domestic Air Transp. Antitrust Litig.*,
   148 F.R.D. 297 (N.D. Ga. 1993) ........................................................................... 12

*Ira Holtzman, C.P.A. v. Turza*,
   728 F.3d 682 (7th Cir. 2013) ................................................................................. 14

*Mims v. Arrow Fin. Servs., LLC*,
   132 S. Ct. 740 (2012) ............................................................................................... 1

*Roundtree v. Bush Ross, P.A.*,
   No. 14-357, 2015 WL 5559461 (M.D. Fla. Sept. 18, 2015) .................................. 16

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ...................................................................... 8

*Schwyhart v. AmSher Collection Servs., Inc.*,
   No. 15-1175, 2017 WL 1034201 (N.D. Ala. Mar. 16, 2017) ................................. 10

*Steinfeld v. Discover Fin. Servs.*,
   No. 12-01118 (N.D. Cal. Mar. 10, 2014) (Dkt. No. 96) ........................................ 12

*Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc.*,
   No. 15-2673, 2018 WL 4539287 (N.D. Ohio Sept. 21, 2018) ................................. 9

*Wreyford v. Citizens for Transp. Mobility, Inc.*,
   No. 12-2524, 2014 WL 11860700 (N.D. Ga. Oct. 16, 2014) ................................. 10

### Statutes

47 U.S.C. § 227 ................................................................................................................ 1
47 U.S.C. § 227(b)(3) ...................................................................................................... 7

### Other Authorities

Manual for Complex Litigation (4th ed. 2004) ........................................................... 4, 5
Newberg on Class Actions (4th ed. 2002) .................................................................. 4, 6
S. Rep. No. 102-178, 1991 U.S.C.C.A.N. 1968 (1991) .................................................. 1

### Rules

Fed. R. Civ. P. 23 ........................................................................................................... 10
Fed. R. Civ. P. 23(a) ...................................................................................................... 12
Fed. R. Civ. P. 23(a)(1) .................................................................................................. 13
Fed. R. Civ. P. 23(a)(2) .................................................................................................. 13
Fed. R. Civ. P. 23(b)(3) .................................................................................................. 13
Fed. R. Civ. P. 23(c)(2)(A) ............................................................................................. 16
Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................... 15, 16

Fed. R. Civ. P. 23(c)(2)(C)(iii) ................................................................................................... 9

Fed. R. Civ. P. 23(e) ................................................................................................................... 4

Fed. R. Civ. P. 23(e)(1) ............................................................................................................ 15

Fed. R. Civ. P. 23(e)(1)(A) ........................................................................................................ 4

Fed. R. Civ. P. 23(e)(1)(B) ........................................................................................................ 5

Fed. R. Civ. P. 23(e)(1)(B)(ii) .................................................................................................. 12

Fed. R. Civ. P. 23(e)(2) ......................................................................................................... 5, 8

Fed. R. Civ. P. 23(e)(2)(C)(ii) ................................................................................................... 8

Plaintiff and Defendant United Collection Bureau, Inc. ("UCB") (collectively, the "Parties") have agreed to a class-wide resolution of this Telephone Consumer Protection Act case, which requires UCB to pay $317,000 into a non-reversionary common fund for the benefit of 138 Class Members whose cell numbers UCB called with 634 prerecorded messages.  Each Class Member who submits a qualified claim will receive a pro rata distribution of the Settlement Benefits, less costs of notice and administration, attorneys' fees and costs, and incentive award, estimated at $500 or more.

This is an excellent result for this Class, considering the risks, burden, and expense of further litigation. There is substantial reason for the Settlement to be approved, and for the Class to be certified for purposes of judgment on the proposal, such that notice to the Class is appropriate. As such, the Court should preliminarily approve the Settlement and direct notice per the terms of the Agreement, as detailed herein.

## I.        BACKGROUND

### A.        Background

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, was enacted in response to widespread public outrage over the proliferation of intrusive, nuisance calling practices. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). Congress found that the unique, personal nature and added cost of mobile phone use mandated strong consumer protections, specifically targeting the autodialed and prerecorded calls it considered to be a greater nuisance and privacy invasion than calls from "live" persons.[1] *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, at ¶ 124 (2015).

Plaintiff filed this action on May 9, 2016, alleging that UCB violated the TCPA by

---

[1]        *See* S. Rep. No. 102-178, 6, 1991 U.S.C.C.A.N. 1968, 1974 (1991) (noting legislative goal of "ban[ning] all autodialed calls, and artificial or prerecorded calls, to ... cellular phones").

1

making nonconsensual calls to her and others' cellular telephone numbers using an automatic telephone dialing system or an artificial or prerecorded voice. Compl. ¶ 24; Agr. ¶ 1. UCB denied the allegations in Plaintiff's Complaint, disputes that it violated the TCPA, contends that the claims of Plaintiff and other members of the class are not amenable to class certification, and denies that Plaintiff and the members of the class are entitled to damages.  The case proceeded through difficult discovery, including heated motion practice concerning UCB's production of class data. Dkt. 19, 28, 62, 66.  Ultimately, Plaintiff moved for class certification on September 17, 2018, Dkt. 75.  UCB moved for summary judgment on September 17, 2018, Dkt. 72, 73.

Soon after the class certification motion and motion for summary judgment were filed, the Parties began to discuss the possibility of class settlement. On December 28, 2018, the parties executed the Settlement Agreement. Exhibit A, Agr. at pp. 14-15. After confirmatory discovery revealed that there were more calls than Defendant previously disclosed, the Parties disputed whether the Settlement Class included calls made using UCB's "IAT CT Center" dialer or just prerecorded messages.  On April 16, 2019, the Parties attended a mediation with a well-respected private mediator in Chicago, Judge Morton Denlow (Ret.).  Although the Parties were unable to agree upon a resolution at that mediation, they participated in further arms-length negotiations. After the mediation, Plaintiff moved to enforce the Settlement based on her position that the Settlement included, as in her motion for class certification, all dialer-made, wrong number calls to non-customers. Dkt. 86. UCB filed a cross-motion to enforce the Settlement based on its position that the Settlement included only pre-recorded messages.  Dkt. 91, 92.  The Court denied Plaintiff's motion and granted UCB's motion on June 18, 2019, limited the class to prerecorded messages only, and ordered the completion of confirmatory discovery before the filing of this motion for preliminary approval. Dkt. 95.

### B.     The Settlement

Pursuant to the Court's order of June 18, 2019, and subsequent confirmatory discovery, the Parties' Settlement Agreement requires UCB to create a non-reversionary Settlement Fund of $317,000—i.e., $500 per call—for the benefit of a Settlement Class defined as follows:

> [A]ll non-customers (1) to whom UCB placed one or more calls, (2) directed to a number assigned to a cellular telephone service, but not assigned to the intended recipient of UCB's calls, (3) by using UCB's IAT CT Center dialer, (4) from May 9, 2012, through October 5, 2018, limited to the 194 class members on the Class List.

> The discovery in this case revealed, and UCB represents, that there are 194 unique phone numbers that fall within the Settlement Class as defined above, with a total of 634[2] prerecorded-voice calls to those 194 numbers. This is the "Class List." Settlement Class Counsel or the Settlement Administrator … will identify the members of the Settlement Class based upon the information, through discovery, that UCB provided to Settlement Class Counsel.

Agr. ¶ 4.

In exchange for the Settlement Benefits, the Settlement Class will release UCB, its affiliates, customers, and other Released Parties for all claims "based upon the TCPA or any state court analog [] resting upon UCB's use of automated equipment or prerecorded messages during UCB's outbound phone calls to cell phones," that accrued at any time up to and including December 28, 2018, the final date of execution of the Agreement. Agr. ¶¶ 8, 18.

Settlement Class Members will be sent notice of the Settlement upon Preliminary Approval, and those who submit a valid and timely claim will receive a *pro rata* share of the Settlement Fund, less notice and administration costs, attorneys' fees and expenses, and any incentive award. Agr. ¶¶ 12, 26. Amounts remaining in the Net Settlement Fund after the initial

---

[2]     Through confirmatory discovery, UCB has identified 214 additional prerecorded-voice calls applicable to a 194-member Settlement Class. Thus, while the language in the Agreement itself references 420 calls to 138 numbers, this was increased in the proposed Settlement Class definition here to account for the $500-per-call "true-up" under Paragraph 30 of the Agreement. This language will be updated throughout the class notice and ancillary Settlement documents.

distributions (i.e., uncashed checks) will be redistributed to Settlement Class Members who cashed their initial check, and if such redistribution is no longer administratively feasible, any remaining funds will be distributed as *cy pres* to the National Consumer Law Center. *Id.*

  **C. Confirmatory Discovery**

  Pursuant to the confirmatory discovery terms of the Agreement, Agr. ¶ 30, Plaintiff deposed UCB's Rule 30(b)(6) representative, Mark Beirdneau, on January 15, 2019 and June 27, 2019. UCB also supplemented its confirmatory interrogatory response to assert that it played a total of 634 prerecorded-voice messages in calls to 194 unique cell phone numbers from May 9, 2012, through October 5, 2018, where there was an indication in its records that such cell phone number was a "wrong number." Exhibit C. This increase from the 420 calls originally identified in the Agreement triggers the "true up" for UCB to pay a total of $317,000, amounting to $500 per prerecorded message. Agr. ¶¶ 4, 30.

**II. LEGAL STANDARD**

  Under Rule 23(e) of the Federal Rules of Civil Procedure, a class settlement may be approved if the settlement is "fair, reasonable, and adequate." Under the recent amendments to Rule 23, the first step in the process is a preliminary fairness determination. Specifically, counsel submit the proposed terms of settlement to the district court, along with "information sufficient to enable [the court] to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A) (2018). This is so that the Court may make "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms[.]" Manual for Complex Litigation § 21.632 (4th ed. 2004); *see also* Newberg on Class Actions, § 11.25 (4th ed. 2002).

  The new Rule calls for front-loaded scrutiny of a proposed settlement so that any issues are identified *before* notice goes out to the class. The new Fed. R. Civ. P. 23(e) states that

grounds exist for class notice where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, where, as here, the proposed settlement would bind class members, it may only be approved after a hearing and a finding that it is fair, reasonable, and adequate, based on the following factors:

(A)  the class representatives and class counsel have adequately represented the class;
(B)  the proposal was negotiated at arm's length;
(C)  the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and
(D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). If the court preliminarily finds that the settlement is fair, adequate, and reasonable, it then "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." Manual for Complex Litigation, § 21.632; Fed. R. Civ. P. 23(e)(1)(B). The second step in the process is a final fairness hearing. Fed. R. Civ. P. 23(e)(2).

As explained below, consideration of these factors supports preliminary approving the Settlement, conditionally certifying the Settlement Class, and issuing notice.

## III.  **THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.**

Because the proposed Settlement is fair and reasonable, and satisfies the requirements of Rule 23, the Court should preliminarily approve the Settlement and direct that notice to the true number of class members be effectuated pursuant to the terms of the Agreement.

### A.  **This Court should preliminarily approve the Settlement.**

#### 1.  **Plaintiff and Class Counsel have and will adequately represent the Class.**

5

Plaintiff has vigorously prosecuted this action on behalf of the Class through active participation, including by gathering information and materials, responding to discovery, staying apprised of the proceedings, and considering and ultimately entering into the Settlement.  Exhibit B, Burke Decl. ¶ 13. There is no indication that Plaintiff has a conflict with any Class Member; her interests in obtaining redress for Defendant's calls are fully aligned with the Class; Plaintiff knows what the case is about, and is committed to her duties as class representative. Dkt. 75-6, Meredith Dep. Excerpts at 24-25 & 29-30.

Furthermore, Plaintiff has retained highly experienced counsel with expertise in TCPA class action litigation. Exhibit B, Burke Decl. ¶¶ 2-12. Plaintiff's attorneys have vigorously prosecuted this action going on three years on a contingency basis, obtained discovery necessary to litigate and negotiate the Settlement, and have the means and readiness to continue to advocate for the Class' best interests. *Id.* ¶ 14. Accordingly, Plaintiff and Class Counsel have and will continue to adequately represent the Settlement Class.

## 2.     The Settlement was negotiated at arm's-length, and there has been no fraud or collusion.

"'[C]ourts respect the integrity of counsel and presume the absence of fraud and collusion in negotiating the settlement, unless evidence to the contrary is offered.'" *Franklin v. Midland Funding, LLC*, No. 10-91, 2011 WL 3557033, at *15 (N.D. Ohio Aug. 12, 2011) (quoting Newberg on Class Actions § 11.51 (4th ed. 2002)). Here, there can be no doubt that the Parties negotiated their Settlement at arm's-length and without fraud or collusion: The Settlement was negotiated and finalized over the course of months by experienced counsel. Exhibit B, Burke Decl. ¶ 13. Additionally, the Parties entered into the Settlement only after both sides were apprised of the facts, risks, and obstacles involved with continued litigation. *Id.* Before negotiating, the Parties exchanged first-party discovery (involving multiple motions to compel),

6

conducted discovery on the nature of the calling at issue, and began adversarial class certification and dispositive motion briefing. Dkt. 72, 73, 75. Moreover, the Settlement itself calls for confirmatory discovery. Agr. ¶ 30. As such, the Settlement was properly negotiated at arm's-length and without fraud or collusion.

### 3. The Settlement provides substantial relief for the Class.

Plaintiff and her counsel's zealous advocacy, the arm's-length nature of the Settlement, the relief afforded under the Agreement, and the equitable treatment to the Class all support a finding that the Settlement is fair, reasonable, and adequate. Indeed, this settlement provides $500 per prerecorded-voice call for each person whom UCB identified as a "wrong number." Similarly, the TCPA provides for $500 per violation, 47 U.S.C. § 227(b)(3). While it is possible to obtain treble damages if violations are found to have been willful, class members could possibly recover for both the automated and prerecorded aspects of the calls, this Settlement provides excellent monetary relief. As such, and as further detailed below, the proposal should be preliminarily approved with an order directing notice to the Class.

### i. The Settlement is preferable to continued litigation.

The Court must also consider "the costs, risks, and delay of trial and appeal" in considering approval of a proposed settlement. Fed. R. Civ. P. 23(e)(2)(C)(i).

Here, the costs, risks, and delay in continued litigation support notice and ultimate approval of the Settlement. Even though Defendant asserted numerous defenses, at $500 per call, Class Members are likely getting what they would receive given a class verdict in their favor. There is little reason to keep litigating given how favorable the terms of this Settlement are.

Moreover, although the Parties have conducted thorough discovery, substantial motion work—including class certification, post-certification notice and discovery, summary judgment,

and trial, remain. A Rule 23(f) appeal would almost certainly follow any adversarial certification ruling, which would further delay any judgment in favor of the Class. Absent settlement, this case could conceivably continue to drag on for another year or more, all without any guarantee that the Class will obtain *any* redress for Defendant's alleged violations. The Settlement avoids these risks and provides immediate and certain relief. *See, Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

Given the costs, risks, and delay of further litigation, the Settlement is reasonable. *See Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," making it "unwise [for the plaintiffs] to risk the substantial benefits which the settlement confers … to the vagaries of a trial").

### ii.  The method of providing relief is effective.

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii).[3]

This settlement proposes the gold-standard in class member relief: cash payments. The Settlement Administrator will perform a reverse-lookup on the Class List to identify Settlement Class Member names and mailing addresses, and mail the class notice and claim form provided as Exhibit 2 to the Settlement Agreement to all such identifiable Settlement Class Members. Agr. ¶ 19. The Settlement Administrator will also create a website through which Settlement Class

---

[3]     The Committee Note to the 2018 amendments to Rule 23(e)(2) says that this factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

Members can view the class notice, obtain contact information for Class Counsel, download the Settlement Agreement, complaint, and other relevant case documents, and even submit a claim directly using a unique identifier provided with the class notice. *Id.* To ensure the greatest reach possible, the Settlement Agreement also permits Plaintiff and the Settlement Administrator to utilize other methods at their disposal to attempt to identify and provide notice to the Class. *Id.*

In order to make a claim, Class Members need only to fill out a simple, 1-page claim form (*see* Agr. at Ex. 2), identifying their contact information, the phone number called, and certifying with a signature that UCB called them during the class period. Claims may be submitted either online or by mail. *Id.*, Agr. ¶ 19. Claim Forms will be reviewed for completeness, timeliness, and correctness through a validation process. Agr. ¶ 20.  Claimants do not need to attach any documentary evidence for claims to be approved.  This claims process is thus simple, straightforward, and accessible, while appropriately discouraging fraudulent claims by requiring a signed certification and verification process.[4]

### iii.  The proposed award of attorneys' fees is fair and reasonable.

"[T]he terms of any proposed award of attorney's fees, including timing of payment," are also factors in considering whether the relief provided to the Class in a proposed Settlement is adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii). Plaintiff's counsel anticipate seeking an award of fees of one-third of the Settlement Fund. Agr. ¶ 12(c)(ii).

This amount falls squarely in line with other approved TCPA class settlements. *E.g., Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc.*, No. 15-2673, 2018 WL 4539287, at *4 (N.D. Ohio Sept. 21, 2018) (awarding fees of one-third of fund in TCPA case); *Wreyford v.*

---

[4]    The Notice also requests that Class Members submit W-9 Forms (provided with the Notice), given the likelihood that distributions will exceed the amount applicable to IRS backup withholding. Agr. ¶ 21. No later than 14 days after the Claim Deadline, the Settlement Administrator will send a follow-up W-9 request to applicable Class Members. *Id.*

*Citizens for Transp. Mobility, Inc.*, No. 12-2524, 2014 WL 11860700, at *1 (N.D. Ga. Oct. 16, 2014) (same); *Schwyhart v. AmSher Collection Servs., Inc.*, No. 15-1175, 2017 WL 1034201, at *3 (N.D. Ala. Mar. 16, 2017) ("attorneys' fees … of one-third of the Settlement Fund ... is fair and reasonable"). Plaintiff's counsel achieved an excellent result after undertaking substantial risk in prosecuting this action on a contingency basis, and they should be fairly compensated.

Prior to final approval, Plaintiff's counsel will file a separate motion for award of attorneys' fees and costs, addressing in detail the facts and law supporting their fee request, and the anticipated fee request will likewise be clearly stated in the Class Notice. Agr. at Ex. 2. Further, not only is this an entirely non-reversionary settlement—meaning that no money is going back to Defendant, period—but the Settlement ensures that all claims will have been submitted a month before the Final Approval Hearing. *See* Agr. at Ex. 4 p. 7. Thus, because attorneys' fees will only be paid after the Court is fully advised of the amount of benefits distributable to valid claimants, the timing concerns raised in the Federal Rules' Committee Notes are not applicable here.[5] *See* Fed. R. Civ. P. 23 Notes ("Settlement regimes that provide for future payments, for example, may not result in significant actual payments to class members…. In some cases, it may be appropriate to defer some portion of the fee award until actual payouts to class members are known.").

### iv. The Settlement treats all Class Members fairly.

The Settlement provides meaningful relief to the Settlement Class, and treats all Class Members equitably relative to each other.

Under the Agreement, all Class Members have an equal opportunity to complete and submit a simple, 1-page claim form in order to obtain a pro rata share of the Settlement Fund less

---

[5] The Settlement contemplates payment of attorneys' fees and costs 30 days after the Effective Date, when Final Approval is no longer subject to appeal. Agr. ¶¶ 10, 13.

notice and administrative costs, attorneys' fees and expenses, and any incentive award. Agr. ¶ 12, Ex. 2. Claims may be easily submitted by mail (including by simply filling out the return Claim Form), or online, within a reasonable, 60-day claims period. Agr. ¶ 12. No later than 30 days after the Effective Date, the Settlement Administrator will mail a settlement check to each valid claimant. Agr. ¶ 22. There will even be further redistributions of any uncashed check amounts to the extent feasible. Agr. ¶ 12(c)(iv). This straightforward claims process and equal relief across claimants supports the fairness of the Settlement.

The release contemplated under the Settlement is equitable among the Class, as well. Under the Agreement, all Class Members will provide a release of claims "based upon the TCPA or any state court analog claims resting upon UCB's use of automated equipment or prerecorded messages during UCB's outbound phone calls to cell phones[.]" Agr. ¶¶ 8, 18. This release is thus tailored to the claims at issue in this case—i.e., automated phone calls by UCB. Agr. ¶ 1. The release does not favor or disfavor certain groups of Class Members over others, since they were all subjected to Defendant's prerecorded-voice calls.

Further, although the amount of Class Member payments under the Settlement cannot be determined with precision until the claims period is complete and the total number of valid claimants is known, with a conservative assumption that notice and administration costs, attorneys' fees and expenses, and any incentive award will not exceed 50% of the Settlement Fund, even at a 100% claim rate, each call would *still* guarantee claimants a payout of $250.[6] The Settlement is thus expected to meet or exceed what has been approved in other cases. *E.g., Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (TCPA settlement estimated at $52.50 per class member); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (TCPA settlement estimated at $34.60/claimant); *Estrada v. iYogi, Inc.*, No. 13-

---

[6]     *E.g.,* [($317,000 fund x 50% for costs, fees, and incentive award) ÷ 634 calls = $250].

1989, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (preliminary approving TCPA

settlement estimated at $40/class member); *Steinfeld v. Discover Fin. Servs.*, No. 12-01118, Dkt.

No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne*

*Receivables Mgmt., Inc.*, No. 08-248, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) ($40 each).

The Settlement, therefore, falls within "a range of reasonableness with respect to a

settlement—a range which recognizes the uncertainties of law and fact in a particular case and

the concomitant risks and costs necessarily inherent in taking any litigation to completion." *In re*

*Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 323 (N.D. Ga. 1993); *see also Id.* at 326

(A court "should consider the vagaries of litigation and compare the significance of immediate

recovery by way of the compromise to the mere probability of relief in the future, after

protracted and expensive litigation."). Indeed, "it has been held proper to take the bird in the

hand instead of a prospective flock in the bush." *Id.* (internal citation omitted).[7]

Because all relevant factors support approval of the Settlement and issuing notice to the

Class, Plaintiff's motion should, respectfully, be granted.

**B.      The Settlement Class satisfies Rule 23.**

Sending notice of the terms of the proposed Settlement is also justified because the Court

will likely be able to certify the proposed Class for purposes of judgment on the proposal. Fed.

R. Civ. P. 23(e)(1)(B)(ii). As detailed below, the Class meets the requirements for certification

under Rule 23(a) and Rule 23(b)(3).

Federal Rule of Civil Procedure 23(a) makes class certification appropriate where:

(1)  The class is so numerous that joinder of all members is impracticable,

---

[7]      In determining whether a settlement is fair in light of the potential range of recovery,
important is the maxim that the fact that a proposed settlement amounts to only a fraction of the
potential recovery does not mean the settlement is unfair or inadequate. *See In re Checking*
*Overdraft Litig.*, 830 F. Supp. 2d 1330, 1350 (S.D. Fla. 2011). This is because a settlement must
be evaluated in light of the attendant risks associated with litigation. *Id.*

(2)  There are questions of fact or law common to the class,

(3)  The claims or defenses of the representative parties are typical of the claims defenses of the class, and

(4)  The representative parties will fairly and adequately protect the interest of the class.

Further, Federal Rule of Civil Procedure 23(b)(3) provides that a class action is maintainable if the above prerequisites have been met and:

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

As demonstrated below, each of the requirements for certification of the Settlement Class is met.

**Rule 23(a)(1) – Numerosity.**  Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "[W]hile there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement[,] *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006), which courts have generally found to require at least 21 to 40 class members.  *Davidson v. Henkel Corp.*, 302 F.R.D. 427, 436 (E.D. Mich. 2014); *see also Crawford v. TRW Auto. U.S. LLC*, No. 06-14276, 2007 WL 851627, at *3 (E.D. Mich. Mar. 21, 2007) ("Although not an absolute rule, it generally is accepted that a class of 40 or more members is sufficient to satisfy the numerosity requirement.").

In the present case, the Settlement Class is comprised of 194 individuals.. This plainly satisfies the numerosity requirement.

**Rule 23(a)(2) – Commonality; and Rule 23(b)(3) –Predominance.**  Fed. R. Civ. P. 23(a)(2) requires that there be a common question of law or fact.  Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions

pertaining to individual members. The commonality requirement is satisfied if there are common questions linking the class members that are substantially related to the outcome of the litigation. *Blackie v. Barrack*, 524 F.2d 891, 910 (9th Cir. 1975).  Predominance is satisfied where "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Humphrey v. Stored Value Cards*, No. 18-1050, 2018 WL 6011052, at *6 (N.D. Ohio Nov. 16, 2018) (citation omitted).

Here, there are questions of law and fact common to the class that predominate over any questions affecting only individual class members.  Predominant common questions include:

(1) Whether the dialing system UCB used to place the calls at issue constitutes an "automatic telephone dialing system" under the TCPA, 47 U.S.C. § 227(a)(1); and

(2) Whether UCB's calling of non-customer wrong-number call recipients failed to constitute "prior express consent" under the TCPA.

Commonality and predominance are thus satisfied; indeed, "[c]lass certification is normal in litigation under [the TCPA], because the main questions … are common to all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

**Rule 23(a)(3) – Typicality.**  Rule 23 requires that the claims of the named Plaintiff be typical of the claims of the class. "A claim is typical where the named plaintiff's claim 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Humphrey*, 2018 WL 6011052, at *4 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)).

Here, typicality is inherent in the class definition.  By definition, each of the Settlement Class Members has been subjected to the same practice as the named Plaintiff; namely, they are non-customers to whom UCB placed a prerecorded-voice, wrong-number call.

**Rule 23(a)(4) – Adequacy of Representation.** "[T]he adequacy of representation

14

inquiry serves to uncover conflicts of interest between the named parties and the class they seek to represent." *Daffin*, 458 F.3d at 553. Plaintiff will fairly and adequately protect the interests of the Class, and she has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Exhibit B, Burke Decl. ¶¶ 2-12. Neither Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue this action. *Id.* ¶ 14.

**Rule 23(b)(3) – Superiority.**   A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of class members in individually controlling the prosecution of separate claims is small because generally the class members are unaware of their rights and have damages such that it is not feasible for them to bring individual actions.  "[O]ne of the primary functions of the class suit is to provide a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group."  *Brady v. LAC, Inc.*, 72 F.R.D. 22, 28 (S.D.N.Y. 1976). In the TCPA context, class actions like this one provide "the optimal means of forcing corporations to internalize the social costs of their actions." *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015).

### C.     The notice plan satisfies the requirements of Rule 23 and due process requirements.

Under Rule 23(e), a court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice that is practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

As such, "[t]he adequacy of class notice is measured by reasonableness," and "[t]he notice must provide the class members with information reasonably necessary to make a decision

whether to remain a class member and be bound by the final judgment or opt out of the action."
*Roundtree v. Bush Ross, P.A.*, No. 14-357, 2015 WL 5559461, at *1 (M.D. Fla. Sept. 18, 2015)
(quoting *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011)).

Here, the Settlement calls for a robust notice program involving direct mail notice to
Settlement Class Members after a reverse lookup, plus a dedicated website, *see* Agr. ¶ 19, to be
administered by a well-regarded, third-party administrator, American Legal Claim Services,
LLC. As such, the notice plan complies with Rule 23 and due process because, inter alia, it
informs the Class of: (1) the nature of the action; (2) its essential terms, including the class
definition and claims, issues, and defenses; (3) the binding effect of a judgment if the Class
Member does not request exclusion; (4) the process to object to, or to be excluded from, the
Class, including the time and method for objecting or requesting exclusion and that Class
Members may make an appearance through counsel; (5) information regarding class counsel's
request for fees/expenses and an incentive award; (6) the procedure for submitting claims to
receive settlement benefits; and (7) how to make inquiries and obtain additional information.
Agr. at Ex. 2; Fed. R. Civ. P. 23(c)(2)(B); *Roundtree*, 2015 WL 5559461, at *1 ("The class
notice provides reasonably adequate information about the nature of the action and the class
settlement, and provides sufficient details for class members to determine whether to remain in
the class or opt out. Accordingly, the form and content of the class notice are approved.").

In sum, the notice plan ensures that Settlement Class Members' due process rights are
amply protected, and it should be approved. Fed. R. Civ. P. 23(c)(2)(A).

## IV.    CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court: (1) direct notice pursuant to
the parties' proposed notice plan, upon a finding that giving such notice is justified by the

parties' showing that the Court will likely be able to approve the Settlement under Fed. R. Civ. P. 23(e)(2) and certify the Class for purposes of judgment on the proposal, (2) set a date for a final approval hearing, (3) set deadlines for members of the Class to submit claims for compensation, and to object to or exclude themselves from the Settlement, and (4) grant such further and other relief the Court deems reasonable and just.

A proposed Preliminary Approval Order is attached as <u>Exhibit D</u>, hereto.

Dated: July 2, 2019                                                    Respectfully submitted,

                                                                      DEBORAH MEREDITH

                                                                      By:  _s/ Alexander H. Burke_____

Alexander H. Burke (*pro hac vice*)
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
aburke@burkelawllc.com

Larry P. Smith (*pro hac vice*)
David Marco (*pro hac vice*)
SMITHMARCO, P.C.
55 W. Monroe St., Suite 1200
Chicago, IL 60603
Telephone: (888) 822-1777
lsmith@smithmarco.com
dmarco@smithmarco.com

Mitchel E. Luxenburg
THE LAW FIRM OF MITCH LUXENBURG
23875 Commerce Park, Ste. 105
P.O. Box 22282
Beachwood, OH 44122
Telephone: (216) 452-9301
mitch@mluxlaw.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 2, 2019, I caused the foregoing to be electronically filed with the Clerk of the United States District Court for the Northern District of Ohio using the CM/ECF system, which will send notification of such filing to all counsel of record.

*s/ Alexander H. Burke*

18